Badgley *v.* Decker.

---•♦•---

## SARAH BADGLEY *vs.* SIMON DECKER.

44   577
130a 248

Proof of the slightest degree of service is sufficient to establish the relation of master and servant, in an action for seduction, and to allow a recovery for the heaviest damages.

The real gravamen of the action for seduction is not the loss of service, but the mortification and disgrace of the family, and the wounded feelings of the plaintiff.

The plaintiff is not restricted to compensatory damages. And it is not erroneous for the judge to charge the jury that in estimating the amount, they may take into consideration the wounded feelings of the plaintiff, and the disgrace to the family.

At common law, the mother could not maintain an action for the seduction of her daughter, while the father was living. But since the recent statutes of this state respecting married women, where a husband has abandoned his wife and family and resides in another state, the wife, owning a house, and being engaged in the business of keeping boarders, on her sole and separate account, may sue alone, for the seduction of her daughter, over twenty-one years of age, who resides with, and performs services for her, about the house.

Between parent and child, when the child is over twenty-one years of age, and lives with the parent, the relation of master and servant may be inferred from very slight service performed by the child, although there may be no express agreement between them.

A married woman having a right, under the statute of 1860, (*Laws of* 1860, *chap.* 66, § 2,) to keep a boarding house on her own account, and consequently to employ servants, for any injury to her servant, *per quod servitium amisit*, a right of action accrues to the wife, equally as if she were unmarried; that being a necessary incident to the right to carry on business on her own account.

Hence, for seducing and debauching her servant, followed by a loss of service, she may sue in her own name, without joining her husband with her.

Badgley *v.* Decker.

The legislature having, by the second section of the act of 1860, authorized
  a married woman to carry on any trade or business, on her own account,
  when in section 7 of that act, as amended in 1862, (*Laws of* 1862, *ch.* 172,)
  it provided that he may sue *in all matters having relation to her sole and sepa-*
  *rate property,* it intended to authorize her to bring all actions necessary to
  protect her rights in carrying on such trade or business.
Where a mother sues for the seduction of her daughter, she is so connected
  with the party seduced as to authorize the jury to consider, and give dam-
  ages for, the injuries received by her through her daughter's dishonor.
  *Per* PARKER, P. J.

THIS was an action brought by the plaintiff against the
defendant for damages occasioned by reason of the de-
fendant having seduced the daughter of the plaintiff, where-
by she became pregnant and was delivered of a male child
on the 14th of June, 1863. The plaintiff is a married ·
woman, but has for more than nine years last past lived
separate and apart from her husband, who left her about
nine years before the trial, during which time she had not
heard from him directly. The case shows, however, that he
resides in Iowa. The plaintiff states, that she does not
know where her husband is. He had made no provision for
her for more than nine years previous to the trial. She is
the owner, in her own right, of the house and lot where she
resides, and is engaged in the business of keeping a boarding
house there on her own sole and separate account. When
the pregnancy occurred, Harriet, the daughter, was 25 years
of age. Her business was that of a milliner and dressmaker.
She resided with her mother at that time, as she has con-
tinued to do for more than nine years, performing services
for her about the house, making her clothes, &c. in the same
manner and to the same extent that the other two daughters
of the plaintiff, who were minors, did. The plaintiff had
one son and three daughters, including Harriet, living with
her at the time the pregnancy occurred. Harriet continued
to reside with her mother at the birth of her child, and her
lying-in expenses were paid by the plaintiff, and herself and
child have since continued to be supported and maintained

by the plaintiff. On the trial, the judge was asked to non-suit the plaintiff upon two grounds: 1. That the plaintiff having a living husband, she could not maintain the action in her own name. 2. That the relation of master and servant did not exist between the plaintiff and her daughter, at the time of the seduction, and for that reason the action could not be maintained. The court denied the motion for a non-suit, and the jury returned a verdict in favor of the plaintiff, for $1000. There were various exceptions to the charge, and to the refusals to charge. The exceptions were ordered to be heard in the first instance at a general term.

*John J. Van Allen,* for the plaintiff. I. This action, under the circumstances, was properly brought by the mother of Harriet, as the latter was at the time of the seduction, pregnancy and lying-in, the servant of her mother, and the loss of service is the gist of an action for seduction. (*Inger-soll* v. *Jones,* 5 *Barb.* 661. 2 *Greenleaf's Ev.* § 573. *Reeves' Dom. Rel.* 291. *Shufelt* v. *Rowley,* 4 *Cowen,* 58. *Martin* v. *Payne,* 9 *John.* 387. *Hewit* v. *Prime,* 21 *Wend.* 79. *Clark* v. *Fitch,* 2 *id.* 461. *Harper* v. *Luffkin,* 7 *Barn. & Cress.* 387. *Edmunson* v. *Machel,* 2 *T. R.* 4. *Sargent* v. ――――, 5 *Cowen,* 106. *South* v. *Denniston,* 2 *Watt's R.* 474.) It has accordingly been held that this part of the issue is maintained by evidence that the party seduced was the adopted child of the plaintiff, (*Irwin* v. *Deaman,* 11 *East,* 23,) or adopted daughter, (*Ingersoll* v. *Jones,* 5 *Barb.* 661,) or his daughter, as well as when she was merely his hired servant, (*Fores* v. *Wilson,* 1 *Peake,* 55,) or his niece, (*Edmun-son* v. *Machel,* 2 *T. R.* 4; *Manvell* v. *Thomson,* 2 *C. & P.* 303.) So it is held sufficient if any acts of service, or of duty are performed, though the party were a married woman separated from her husband and had returned to live with the plaintiff, who is her father. (*Harper* v. *Luffkin,* 7 *B. & C.* 387.) This action has also been held to lie in favor of a widowed mother living with her daughter, who was seduced,

the daughter being of full age, and owning the household establishment, but performing acts of service to the mother and family. (*Villepigue* v. *Shular*, 2 *Strobh.* 462. 2 *Greenleaf's Ev.* § 573, &c. and note, p. 561.) The plaintiff has for more than nine years lived separate and apart from her husband, and is engaged in the business of keeping a boarding house on her sole and separate account. The act passed March 20, 1860, chap. 90, p. 157, reads as follows: "The property both real and personal, which any married woman now owns as her sole and separate property; that which comes to her by descent, devise, bequest, gift or grant; that which she acquires by her trade, business, labor or services, carried on or pursued, on her sole and separate account, &c. shall notwithstanding her marriage, be and remain her sole and separate property, and may be used, collected and invested by her in her own name, and shall not be subject to the interference or control of her husband, or liable for his debts." (§ 1.)

Section 2, provides that "a married woman may bargain, sell, assign and transfer, her separate personal property, and carry on any trade or business, and perform any labor or services, on her sole and separate account, and the earnings of any married woman from her trade, business, labor or services, shall be her sole and separate property, and may be used and invested by her in her own name."

Chapter, 172, Laws of 1862, p. 343, section 7, provides that "any married woman may, while married, sue, and be sued, in all matters having relation to her sole and separate property, &c. in the same manner as if she were sole; and any married woman may bring and maintain an action in her own name, for damages against any person, or body corporate, for any injury to her person or character, the same as if she were sole, &c."

The seduction occurred subsequent to these acts, and as the mother was doing business on her sole and separate account, the avails of which belonged to her solely, and in

which business, and avails, her husband had no interest whatever, and as the employment of the daughter was directed towards the assistance of her mother in thus carrying on the same, it follows that the loss of service accrued to the plaintiff alone, and not to her husband. Harriet being over twenty-one years of age, and not being in the actual service of the father, he could maintain no action for her seduction, as her services did not in fact belong to him, and she was in no wise subject to his commands. When the action is for the seduction of a female of *legal age,* it can only be sustained by establishing the existence of the relation of master and servant, *in fact,* at the time of the seduction. (*Per Harris, Justice, in Bartley* v. *Richtmyer,* 2 *Barb. S. C. R.* 187.) In such case, however, evidence of the slightest character is held sufficient to show that at the time of the injury done the plaintiff was enjoying the services of the female seduced. (*Ibid. Harper* v. *Luffkin,* 7 *Barn. & Cress,* 387. *Spright* v. *Oliveria,* 2 *Stark. Rep.* 493. *Matter of Thompson,* 1 *Wend.* 44. *Nickleson* v. *Stryker,* 10 *John.* 115. *Moran* v. *Dawes,* 4 *Cowen,* 412. *Martin* v. *Payne,* 9 *John.* 387. 2 *Greenleaf's Ev.* § 576.) It was clearly shown that Harriet lived with her mother, and rendered to her services in carrying on her business, making clothes, and in connection with a minor sister, a part of the time carried on for her mother the business of dressmaking, the avails of which the mother also had, the same being used in buying provisions, clothes, &c. for the mother. The case fully discloses the fact that the relation of *loco parentis* existed between the plaintiff and Harriet; therefore his honor the judge properly refused to nonsuit the plaintiff.

II. The action is properly brought without joining the husband. (*Laws of* 1862, *chap.* 172, § 7.) The father having no claim, right or interest, in or to the services of Harriet, either directly or indirectly, it would have been error to have joined him as a plaintiff in this action; therefore the defendant's objection was not well taken.

III. The exception to the refusal to charge, that the plaintiff is entitled to recover only actual damages, was not well taken.   The learned justice charged the jury distinctly and fairly upon this question, and most certainly the defendant has no cause of complaint, as he expressly instructed the jury that in determining the question of damages they were to look at all the circumstances of the case, and under such circumstances as are here presented, the jury were to render such a verdict as justice required.   In thus rendering such verdict the jury necessarily took into consideration the previous relations of the parties, as well as all other circumstances connected with the case.   In fact the judge should have charged the jury that the plaintiff was entitled to recover vindictive damages.   (2 *Greenl. Ev.* § 579.   *Ingersoll* v. *Jones,* 5 *Barb.* 661.   *Bartley* v. *Richtmyer,* 2 *id.* 182.) Judge Reeve, in his *Domestic Relations, p.* 292, says : "Although by legal fiction the action has its foundation in loss of service, yet it really has its foundation in another principle, the disgrace of the family." (*See* 3 *Strobh. Law R.* 462.)   The wound certainly was none the less painful to the family of Mrs. Badgley by reason of the absence of her husband.   The disgrace was quite as humiliating and the grief caused by the terrible wrong inflicted upon the plaintiff's family was no less bitter because the plaintiff had been deserted by her husband ;   therefore we insist, as matter of law, the judge should have charged the jury to give vindictive damages to the same extent as if the action had been prosecuted by the father.   They certainly were not misled by the charge of the judge to the prejudice of the defendant. The jury were instructed to assess the damages which under all the circumstances of the case the plaintiff had sustained. This they have done in accordance with such instructions. In so doing they simply discharged the obligations imposed upon them by law, and as they were the judges of the damages, this court should not disturb their finding.   The court will not interfere in actions of this kind, either upon

Badgley *v.* Decker.

the ground of excessive damages or that the verdict is against the weight of evidence. (*Coleman* v. *Southwick,* 9 *John.* 45. *Southwick* v. *Stevens,* 10 *id.* 443. *Ward* v. *Center,* 3 *id.* 271. *Jarvis* v. *Hathaway, Id.* 180, 183. *Feeter* v. *Whipple,* 8 *id.* 369. *Woodward* v. *Payne,* 15 *id.* 493. *Sargent* v. ———, 5 *Cowen,* 106.)

A new trial should be denied and judgment ordered to be entered for the plaintiff upon the verdict, with costs.

*S. C. Keeler,* for the defendant. I. At common law, this action could not be maintained by a woman having a living husband ; she could have no *status* in court, and no claim could be made by her, or suit founded upon such alleged claim, to recover damages for the seduction of her daughter, and it would be of no moment that she lived separate from her husband. Has this rule been changed by the legislature of the state, in relation to the rights of married women ? We submit that it has not, but the rule remains the same as at common law. By section 114 of the code, when the action concerns her separate property, she may sue alone. The acts of 1848-9 define in what cases she may acquire property, and what that property shall be. For any interference with her property, acquired as provided in those acts, she can undoubtedly sue alone. It will hardly be pretended that the plaintiff could maintain this action, if there was no further legislation on the subject. The 7th section of chapter 90, Laws of 1860, gives her the right to sue and be sued in all matters having relation to her separate property, or which may come to her by descent, devise, bequest or gift, in the same manner as if she were sole. And it further provides that a married woman may bring and maintain an action in her own name for damages for any injury to her person or character. This section was amended by the third section of chapter 172, Laws of 1862, by inserting after the word "bequest" the word *"purchase,"* and also the words "or grant" after the word "gift ;" but the action that she might

maintain viz. "for any injury to her person or character," is the same as in the act of 1860.

By these statutes, a married woman may bring an action in three distinct classes of cases without joining her husband. 1. When the action has relation to her sole and separate property. 2. For an injury to her person. 3. For an injury to her character. All other actions affecting the family relations, must be brought as formerly. These statutes being an innovation of the common law, are not to be extended beyond the fair import of the language used. This has been so repeatedly held, in regard to these very statutes, that a citation of authorities is unnecessary.

1. Does this action relate to the sole or separate property of the plaintiff? This can hardly be pretended. It in nowise affects her separate property even if she has any. By taking these statutes altogether, it is very evident what is intended by the words, "in relation to her sole and separate property." By the acts of 1848–9 the right was conferred upon her to take and hold real and personal property by gift, grant, &c. and dispose of the same, in the same manner as if she was unmarried. These acts gave her no authority to engage in a general trade, to do business in her own name, or to bind herself by note or contract. Section 2, of the act of 1860, which is still in force, authorized her to bargain, sell, assign and transfer her separate property, and carry on any trade or business, and perform any labor or services on her sole and separate account; and the earnings of any married women from her trade, business, labor, or services, shall be her sole and separate property, and may be used and invested by her in her own name. Then the separate property which a married woman may acquire, is property given, &c. or purchased by her, or the earnings of her trade, business, &c. Then the cases in which she might bring an action are plain. If she has separate property, and any person interferes with it, or she makes any contract in reference thereto, then she might bring an action the same as if

Badgley *v.* Decker.

she was single. If she engage in trade, or business, or ren-
ders any service, she can bring an action therefor upon any
contract she makes in reference thereto. This is the full
extent of the authority vested in her by these statutes.
Now, a married woman has a daughter, for the sake of the
argument, a member of her family ; the daughter is de-
bauched : an action by the mother for the seduction most
certainly does not relate to her separate property, and neither
would a judgment recovered be "earnings," for to constitute
"earnings" her separate property, they must be from her
trade, business, labor or services—not damages for the pros-
titution of her daughter. To test the plaintiff's right to
maintain this action, suppose this verdict for $1000 should
be collected, to whom does it belong? Not to the plaintiff.
The statute nowhere gives her the right to acquire property
in this way, and hold it as her own. And before she can
hold property of any description, she must show her warrant
in the law for so doing. Then it follows as a logical sequence
that if the plaintiff has no right to hold this verdict as her
sole and separate property, then she has no right to maintain
this action. She not being the party in interest—not being
authorized by any statute to sue for damages in any such
action, or to acquire a separate property by action for the
seduction of a daughter, the common law rule obtains, and
the common law rule controls in every case except where it
has been modified or changed by statute. (*Woodbeck* v.
*Havens*, 43 *Barb:* 66.) It is unnecessary for courts to go in
advance of the legislature in conferring upon married women
new and extraordinary rights, especially in these days of pro-
gress and great moral ideas, when the whole family relations
are almost subverted by the sentimental law-makers of the
state. For all practical purposes, they go sufficiently fast.
And we insist that the court should, even in this case of
alleged *seduction*, give the statute such a construction that
a married woman will not acquire a separate property out of
the invited prostitution of her daughter, but that her sepa-

Badgley v. Decker.

rate property shall be acquired in the manner mentioned in the statute.

2. This action is certainly not for an injury to her person. Such injuries are for assault and battery and the like.

3. And neither can it be for injury to character. This refers to libel, and slander, and actions of that character.

The statute, then, merely gives her the right to sue and be sued in relation to her separate property, and the other cases above alluded to, and that an action of libel in no sense refers to her separate property, and that the common law rule prevails in all cases except those specifically provided for in the statute, is decided in the case of *Horton* v. *Payne*, (27 *How. Pr. R.* 374.)

II. This action can not be maintained, for the reason that the relation of master and servant did not exist, at the time of the seduction. In this case the daughter was twenty-seven years of age at the time the alleged seduction took place. The plaintiff, therefore, had no legal right to command the services of her daughter, and it was incumbent on her to show that the relation actually and not constructively existed. (*Nickleson* v. *Stryker*, 10 *John.* 115. *Thompson* v. *Miller*, 1 *Wend.* 447. *George* v. *Van Horn*, 9 *Barb.* 523. *Bartley* v. *Richtmyer*, 4 *Comst.* 38.) It has been said that as between parent and child, slight service is sufficient to make out the relation of master and servant, and it was upon this view of the case that the judge submitted the case to the jury, as is apparent from his charge. We do not intend to deny this proposition as an abstract rule, but we insist that the rule is not applicable to this case. The utmost that can be said is, that if a daughter is rendering service, although the proof is slight, the law will intend that the relation exists. But if she is at work by the day or by the week for a third person, and goes to her parents' home to lodge, and during this time should make her bed, darn her mother's stockings, sew upon her apparel, or do any ordinary act of house work, then it can not be said that it is to be presumed

Badgley *v.* Decker.

that she is in the service of her parent, because the proof would show that she was in the service of another, and overthrow the presumption that would otherwise attach. So if the daughter over age should be in business for herself, carry on a shop, advertise, &c. although she might occasionally do a little work for the family, the proof that shows that she was engaged in business for herself would negative any presumption that she was bound to render service to her parent, or that the relation of master and servant existed. The facts of this case are precisely as above. The question is, was the daughter the servant of the mother at the time the pregnancy occurred? not whether she subsequently became such. The evidence on this subject shows that in the spring of 1861 she engaged in the business of dress making in a separate room, and that she occupied that room in this business until November, 1862, when she left it and went to her mother's and carried on the same business. She claims that in September, 1862, she became pregnant by intercourse in this room. The evidence further shows that she advertised in her own name her business in the newspaper of the village where she lived, at a time when she had no motive in pretending to be the servant of her mother. When this woman was carrying on business in her own name, and for her own benefit, how can it be said that the law will imply an agreement that she was in the service of another? in other words, a servant. We are not left to implication; the woman herself swears that there was no agreement between her and her mother in relation to her service, or the manner in which she lived at her house. To constitute a servant there must be some contract, either express or implied, to render service. In this case there is certainly no express contract, and upon the facts none can be implied, because the daughter was engaged in business for herself, which is entirely incompatible with the idea of being in the service of another. The gravamen of the action is the inability of the servant to perform the services for which she is accountable to her master as servant. If the

actual (not a constructive) relation did not exist, the action fails. (7 *Mann. & Gr.* 10, 33. *Bouv. Law Dic. title Seduction, and cases cited.*) We therefore submit that the judge was in error in refusing to nonsuit the plaintiff upon this ground.

III. Assuming that the plaintiff is entitled to recover, then the charge of the judge, and his refusal to charge, is erroneous. If the daughter was in the plaintiff's service, and being over age, the plaintiff is only entitled to recover the actual damages by her sustained. The case is not one of those where vindictive damages are allowed. If the daughter had been in the service of a stranger and was debauched, the recovery would be limited to the actual damages sustained. The same rule should be applied to the plaintiff. If her servant has been incapacitated from performing labor which she was obliged to perform, the recovery should be for the loss consequent upon the injury. The court in this particular case, we submit, should not be very astute in implying a contract of service. There is nothing in the proof that requires an already overstrained rule to be still further stretched to uphold this case. Upon either of the grounds raised the verdict should be set aside and a new trial ordered.

MASON, J. There was evidence in this case sufficient to go to the jury upon the question of the relation of master and servant, existing between the plaintiff and her daughter. The slightest degree of service has been holden sufficient to maintain the action, and to allow a recovery for the heaviest damages. (*Reeve's Dom. Rel.* 292. *Knight* v. *Wilcox*, 15 *Barb.* 279.) The daughter lived with her mother, and was in the habit of assisting to some extent in doing the work in the family. It is not disputed but that she performed various acts of service for her mother, the plaintiff, and quite sufficient to meet the requirements of the rule in this action.

The rule is still adhered to, with us, that loss of service is the legal gravamen of the action, (*Bartley* v. *Rightmyer*,

4 *Comst.* 38,) but to accommodate the action to cases where the daughter rendered no service, a presumed or a fictitious service is resorted to as the gravamen. (3 *Burr.* 1893. 2 *D. & E.* 166, 168. 7 *Carr. & Payne*, 528. 9 *John.* 389. 2 *Wend.* 459. 21 *id.* 79, 82.)

All the modern cases hold that the legal gravamen of the action is not the real gravamen, as is apparent when we come to consider the rule of damages recognized in the action; and judges have not unfrequently spoken of the action as resting upon a fiction. In *Clark* v. *Fitch*, (2 *Wend.* 459,) there was no proof of actual loss, and *Martin* v. *Payne*, (9 *John.* 387,) was decided upon the ground that none was necessary; and in *Hewit* v. *Prime*, (21 *Wend.* 79,) it was held that an action may be sustained by a father for the seduction of his daughter, without proving any actual loss of services. It is enough that the daughter be a minor residing with her father, and that he has a right to claim her services. The court of appeals, in the case of *Bartley* v. *Richtmyer*, (4 *Comst.* 38,) still adhere to the doctrine that the legal gravamen of the action is the loss of services, and that to sustain the action there must be some loss of service. There is no necessity, where the daughter is of full age, to show a contract of service, when she is living with her parents. The presumption is she is a servant if she lives with father or mother. (*Reeve's Dom. Rel.*) The real gravamen of the action is not the loss of service. That is a very small item in the measure of damages. The loss of service in many cases could not be considered any thing, in reality, and often when the least service is performed the highest damages are given. The real gravamen of the action is the mortification and disgrace of the family, and the wounded feelings of the plaintiff.

The next and by far the more difficult question in this case is, can the plaintiff, the mother of this daughter, sue alone, and maintain this action while her husband is living, assuming that the relation of master and servant actually

existed at the time of the seduction? At common law she certainly could not. It remains to be considered whether she can under our existing statutes. The plaintiff has for nine years and more lived separate and apart from her husband, and he absent from the state, having undoubtedly, from the evidence, abandoned his family altogether. The plaintiff owns a house of her own and is engaged in the business of keeping a boarding house on her sole and separate account, as the statute permits her to do. The act of March 20, 1860, (*Laws of* 1860, *chapter* 90,) declares that the property, both real and personal, which any married woman now owns as her sole and separate property, that which comes to her by descent, devise, bequest, gift or grant, or that which she acquires by her trade, business, labor or services, carried on or pursued on her sole and separate account, &c. shall, notwithstanding her marriage, be and remain her sole and separate property, and may be used, collected and invested in her own name, and shall not be subject to the interference or control of her husband or liable for his debts.

The second section provides that a married woman may bargain, sell, assign or transfer her separate personal property, and carry on trade or business, and perform any labor or service on her sole and separate account, and that the earnings of any married woman from her trade, business, labor or services shall be her sole and separate property, and may be used and invested by her in her own name.

Section 7 of chapter 172 of the Laws of 1862, p. 344, declares that any married woman may, while married, sue or be sued in all matters having relation to her sole and separate property, &c. in the same manner as if she were sole. (*Laws of* 1862, *p.* 344, § 7.)

The question is presented, then, does the loss of service of the daughter in this case have relation to the plaintiff's sole and separate property?

The second section of the act of March 20, 1860, above cited, declares that the earnings from carrying on this business

Badgley v. Decker.

of keeping a boarding house shall be her sole and separate property. Now if the earnings resulting from keeping a boarding house are her sole and separate property, it is very difficult to say that the servants who are employed by her in carrying on that business have not a relation to her sole and separate property. Such an establishment can not be carried on without the assistance of servants, and when the law gives to a married woman the absolute right to carry it on, it should afford her protection—the common protection which the common law throws around one in such a position. It should give her an action against a wrongdoer who entices away her servant and deprives her of her services.

It should give her an action against one who beats and injures her servant, if there is a loss of services consequent thereon. It should give her an action against one who seduces and debauches her servant, if there is a loss of service shown. All of these acts directly affect her legitimate business, which the law allows her to carry on, and have a direct relation to the earnings and fruits of her business, and therefore indirectly, if not directly, have relation to her separate property.

It seems to me that as the statute grants to her the independent right to carry on any trade or business on her own account, the same as if she were a single woman, it carries with it by implication, as an incident—as necessary to the very protection of the right granted—these actions against wrongdoers who shall entice away, beat and injure or debauch her servant. And I am not able to perceive why it does not; and where the act directly tends to injuring her business, as the debauching of a servant does, I can not perceive why it has not some relation to her separate property, the earnings of that business.

It is the duty of courts to give this statute such a construction as will afford the protection of law to the rights clearly granted by the act.

It would be simply absurd to hold that under this statute

Badgley *v.* Decker.

a married woman who was carrying on business on her own account could not be sued by a servant to recover pay for his services; or that she could not sue the servant for a violation of his or her contract; much more a wrongdoer who should deprive her of the services of her servant. As the loss of services is the legal gravamen of this action for services, we must assume that she could not maintain any action for wrongful interference with her servants, if she can not maintain this. I am therefore led to the conclusion, without much doubt in regard to the matter, that the plaintiff can maintain this action. And I think that in estimating the damages it was legitimate and proper to take into the account the fact that the plaintiff is the mother, and that she was the head of her family, having a son and two daughters younger than the one seduced, residing in the family, and the consequent injury to the mother's wounded feelings and the disgrace to the family; and that therefore the charge of the judge in regard to the damages, was correct. He certainly could not charge as requested by the defendant's counsel, that the plaintiff was entitled to recover nothing except her actual damages. I know of no adjudged case where it has ever been so held. There were but three exceptions taken to the charge of the judge. The first is to that part of the charge which holds that the action is maintainable by the plaintiff without joining her husband; and this we have seen is not well taken. The second is to that part of the charge which holds that slight services of the daughter over twenty-one years of age are enough to sustain the action. This, as we have already shown, was not well taken. The third is to that part of the charge which allows the jury to take into consideration the injured feelings of the plaintiff. This distinct point was taken by exception to the judge's charge in *Knight* v. *Wilcox,* (18 *Barb.* 212,) and the charge was sustained, after full argument before the general term in the 7th district. (*See also Sedgwick on Damages,* 542, 2d ed.; 4 *Comst.* 38.) The judge's charge fairly covered the whole

Badgley *v.* Decker.

case, and he committed no error in refusing to charge the various requests of the defendant's counsel; and I advise that a new trial be denied.

PARKER, P. J. This is an action for the seduction of the plaintiff's daughter. The plaintiff is, and was at the time of the seduction, a married woman, residing apart from her husband, who had deserted her, and keeping a boarding house on her own account. The daughter was at the time of the seduction, about twenty-five years of age, and was carrying on the business of a dress maker, in a shop away from her mother's house, ostensibly on her own account, but living in the family of her mother, and performing occasional household services for her, though without any agreement between them, and her mother received the avails of her business.

At the trial the court was asked to nonsuit the plaintiff on two grounds: 1st. That the plaintiff, having a living husband, could not, in her own name, maintain the action. 2d. That the relation of master and servant did not exist between the plaintiff and her daughter, at the time of the seduction. The nonsuit was refused, and the jury gave a verdict in favor of the plaintiff, for $1000.

The judge submitted the question to the jury, whether the relation of master and servant existed, stating to them that "the daughter being upwards of twenty-one years of age, the bare fact that she lived with her mother, is not sufficient evidence that the relation of master and servant existed between them. There must be proof that she rendered some slight service in the family; but the slightest service that the daughter over twenty-one years of age might render is sufficient, *prima facie*, to constitute the relation of master and servant; and it is not necessary for the plaintiff to prove any particular agreement, to constitute it." To this the defendant excepted.

It is well settled, that between parent and child, when the child is over twenty-one years of age, and lives with the

parent, the relation of master and servant may be inferred from very slight service performed by the child, although there may be no express agreement between them. (2 *Greenl. Ev.* §§ 572–576. *Bennett* v. *Allcott,* 2 *T. R.* 166. *Irvin* v. *Dearman,* 11 *East,* 23. *Moran* v. *Dawes,* 4 *Cowen,* 412. *Harper* v. *Luffkin,* 1 *Barn. & Cres.* 387. *Lipe* v. *Eisenlerd,* 32 *N. Y. Rep.* 229.) The plaintiff testified that her daughter helped her about the house, and worked at all the household business ; that she worked as her other children did ; that she went into the room which she occupied as a shop, together with her minor sister, by the plaintiff's direction ; and that the plaintiff had the avails of her labor. Under this evidence the court can not decide that she was not the plaintiff's servant, though she did carry on business in her own name. The charge, in this respect, was, I think, correct.

The coverture of the plaintiff was no obstacle to such relation between her and her daughter ; especially under the existing law of husband and wife. By the statute of 1860, (*Laws of* 1860, *ch.* 90,) she had the right to keep a boarding house on her own account, as she was doing, and consequently to employ servants. It follows, that for any injury to her servant, *per quod servitium amisit,* a right of action accrued to her, equally as if she had been unmarried. This is a necessary incident to the right to carry on business on her own account, and to employ servants therein. And I am inclined to think that for such cause of action a suit may be maintained in her own name, without joining her husband with her.

By the code, § 114, when a married woman is a party, her husband must be joined with her, except in two cases. One is, "when the action concerns her separate property, she may sue alone ;" and by section 7 of the act of 1860, (*amended by chapter* 172 *of act of* 1862,) "any married woman may, while married, sue and be sued *in all matters having relation to her property.*" And by the same section, "any married woman may bring and maintain an action in her own

Badgley *v.* Decker.

name, for damages against any person or body corporate for any injury to her person or character, the same as if she were sole; and the money received upon the settlement of any such action, or recovered upon a judgment, shall be her sole and separate property." Now, if under section 114 of the code it is doubtful whether the plaintiff could maintain this action in her own name, yet, inasmuch as this act of 1860 had, in § 2, authorized a married woman to carry on any trade or business on her own account, it must be conceded, I think, that when in § 7 it provides that she may sue *in all matters having relation to her property*, it intended to authorize her to bring all actions necessary to protect her rights in carrying on such trade or business. The proceeds of her trade or business are specifically declared to be her separate property, and any wrongful interference with her business, either by enticing away her servants, or otherwise depriving her of their services, whereby the proceeds of her business are lessened, is a matter having relation to her property. Such, it seems to me, must have been the intent of the lawmakers, in using that language; especially when considered in connection with the latter part of the section, which gives to a married woman the right to bring actions for injuries to their persons or characters. A construction of the language "all matters having relation to her property," which would exclude such a matter as this, it seems to me does not comport at all with the spirit and intent of the act. The action, I think, is well brought in her own name, without joining her husband with her.

In regard to the question of damages, the court was right in holding that the plaintiff was not restricted to compensatory damages. In the recent case of *Lipe* v. *Eisenlerd*, (32 *N. Y. Rep.* 229,) the court of appeals holds that the right of the jury to give exemplary damages, in such actions as this, is not confined to cases where the plaintiff makes title solely through the parental relation; but such damages may also be given when the required relation of master and

servant is established by convention; and the following rule is laid down: "The true rule, I think, is that the plaintiff's right to the services may be made out in either way, and that when established, so that the action is technically maintained, the court and jury are to consider whether the plaintiff on the record is so connected with the party seduced, as to be capable of receiving injury through her dishonor."

There can be no doubt that the plaintiff in this case was so connected with the party seduced, as to authorize the jury to consider, and give damages for, her injury received through her daughter's dishonor.

I do not see any error calling for a new trial, and am of the opinion that it should be denied with costs, and judgment rendered upon the verdict.

BALCOM, J. concurred.

New trial denied.

[BROOME GENERAL TERM, November 21, 1865.  *Parker, Balcom* and *Mason*, Justices.]