SMITH *vs*. GOODMAN. HOWELL & COMPANY.

In an action for enticing away the servants of another, the evidence showed that the circumstances attending the wrong were of a very aggravated character; that the plaintiffs, at considerable expense and much trouble, had procured the laborers enticed and persuaded, away from them and afterwards retained by the defendant during their term of service. One who had been in the employment of the plaintiffs was used by the defendant as his agent to decoy these persons and bring them to him. The plaintiffs were put to expense and loss of time in endeavoring to induce them to return. They were compelled to employ counsel. When they applied to the defendant for a settlement of their claim, they were met with contumely, insult and abuse. Plaintiffs proved their loss by showing what would have been the net profits of each of these laborers, and what they had lost by the failure to improve their property in consequence of the decoying and retaining of their servants. The verdict was for less than the amounts so proved:

*Held*, that the verdict was not excessive, and the measure of damages on which it was founded was proper.

(*a*.) The existence of a cause of action was not denied. .

(*b*.) Where, in such a case, aggravating circumstances in both the act and intention existed, the jury would not be confined to actual damages, but might give an additional sum to deter the

wrong-doer from repeating the trespass, or as compensation for the wounded feelings of the plaintiffs.

(c.) This point was not raised in the cases in 43 *Ga.*, 601 ; 47 *Id.*, 311.

January 26, 1886.

Criminal Law. Master and Servant. Damages. Verdict. Before Judge CARSWELL. Bulloch Superior Court. April Term, 1885.

Goodman, Howell & Company brought an action for damages against K. A. Smith for enticing away laborers pending their term of service. On the trial, the evidence for the plaintiff was, in brief, as follows : The plaintiffs sent an agent to North Carolina to secure hands to work on their turpentine farm, and secured nine. The expense of transporting them to the farm was $15 each. The contract was that the plaintiffs were to pay their passage to the farm, and back to North Carolina at the end of the year, and to pay them $175. After working about three days, they disappeared, one going first and afterwards the others. They were traced to the defendant's place, and one of the plaintiffs caught sight of one of the hands there. He asked the defendant about them. The latter said he did not know where they were that day, but that they were at work for him. He said that one Herring (the first hand who left) told him he could get hands and brought these, and that he had sent one Williams, who was in his employment, to get the hands Herring had obtained for him. Howell, a member of the plaintiffs' firm, told Smith that the hands were in the plaintiffs' employment, and that they had been at considerable expense in getting them, and demanded their restoration. Smith said, "Get them if you can," and refused to give them up, making use of some threatening expressions. The plaintiffs took out a warrant. The defendant told Howell that he could get the hands if they would go, but they were unwilling. Howell then proposed to settle the matter, if the defendant would pay the expenses to which the plaintiffs had been

put in obtaining the hands, telling him what such expenses were. He offered to give $5. The loss of the hands stopped the plaintiffs' work for two weeks, and caused them to lose the cutting of one crop of turpentine boxes. The net profit of one hand on a turpentine farm is generally put at fifty dollars. Nine hands went to Smith's. The plaintiffs spent, in tracing them, thirty to thirty-five dollars, and incurred expenses for attorneys' fees in this case of one hundred dollars.

The evidence for the defendant conflicted with that of the plaintiffs. He denied knowing where the hands came from, or enticing them, and stated that Herring, who had worked for him the previous year, said he could get some hands. Williams was sent with him, and the defendant employed the hands they brought, paying them for the work they did, but not contracting for the year or season. He testified that, when Howell came and said he was after some hands, defendant said, "If the hands are here, you can get them," and that he could take them if they would go, but the hands refused to do so, on the ground that the plaintiffs had not complied with their contract.

The jury found for the plaintiffs $560. The defendant moved for a new trial, on the following among other grounds:

(1.) Because the verdict was contrary to law and evidence.

(2.) Because the court permitted the plaintiffs to propound the following questions to a witness: "What was the damage to your farm by reason of the leaving of the hands?" "What is the net profit of the hands lost to you?" [In a note, the court certified that the counsel for the plaintiffs asked the witness (one of the plaintiffs) what was the general damage they sustained by the loss of the hands; that, on objection, the court held that the plaintiffs could prove what would have been the net profits realized from each of the hands enticed away in the business in which they were employed; and that the examina-

tion of the witness was then conducted in accordance with this ruling of the court.]

The motion was overruled, and the defendant excepted.

R. F. O. SMITH; T. H. POTTER, for plaintiff in error.

D. R. GROOVER; LESTER & RAVENEL, for defendants.

HALL, Justice.

That the enticing, decoying or persuading a servant to leave the service of his master, or knowingly retaining and employing him after he has left, during the term for which he engaged to serve, gives an action to the injured party against the wrong-doer, was not denied. From an early period, this seems to have been regarded as a grievous wrong; indeed, Sir William Blackstone (3 Comm., 143) characterizes it as both " an ungentlemanlike " and " illegal " act. This point was not even raised in this case. The objection urged here is as to the measure of damages on which the jury seems to have found their verdict. The circumstances attending the. infliction of this injury were of a very aggravated character. The plaintiffs, at considerable expense and with much trouble, had procured the laborers enticed and persuaded from them and afterwards retained by the defendant during their term of service. One, who had been in their employment, was used by the defendant as his agent to decoy these persons and bring them to him. The plaintiffs were put to expense, and lost time in endeavoring to induce them to return. They had to employ counsel to assist them in the assertion of their rights and to redress their wrongs. When they applied to the defendant for a settlement of their claim, their just demand was met with contumely, insult and abuse. They proved their loss by showing what would have been the net profits of each of these laborers, and what they had lost by the failure to improve their property in consequence of the decoying and retaining of these servants by

the defendant and his coadjutors. We cannot see that any other elements than these entered into the damages found by the jury. Indeed, they failed to find the full measure as shown by this proof, and which they might, and as we think, have done, even under the most restricted rules which have been laid down by our court upon this subject. *Salter vs. Howard*, 43 *Ga.*, 601; *Lee vs. West*, 47 *Id.*, 311. And where, as in this case, there were aggravating circumstances, both in the act and the intention with which it was done, were it necessary to sustain this verdict, we should feel little hesitancy in upholding such additional damages as the jury might have seen proper to give in order to deter the wrong-doer from repeating the trespass, or as a compensation for the wounded feelings of the plaintiffs. Code, §3066. *City and Suburban R. R. vs. Brauss*, 70 *Ga.*, 368, 379. Such an allowance would not necessarily conflict with the rule laid down either in *Salter vs. Howard* or *Lee vs. West*. This question was not raised or passed upon in those cases. The verdict in this case was demanded by the evidence, and the judge was right in refusing, on defendant's motion, to disturb it.

Judgment affirmed.