HENRY M. PICKLE, Respondent, *v.* W. BERTRAM PAGE, Appellant.

(Argued November 22, 1929; decided January 7, 1930.)

*Albert W. Robbins* for appellant. Damages recoverable are limited to the value of the services of the child, and the court erred in permitting the jury to consider other elements of damage. (*Covert* v. *Gray*, 34 How. Pr. 450; *McCarty* v. *Bogardus*, 17 Wkly. Dig. 436; *Muller* v. *Hillenbrand*, 179 App. Div. 831; *Kennedy* v. *Woolworth Co.*, 205 App. Div. 648; *Tidd* v. *Skinner*, 225 N. Y. 422; *Cowden* v. *Wright*, 24 Wend. 428; *Damon* v. *Moore*, 5 Lans. 454; *Castanos* v. *Ritter*, 10 Sup. Ct. 370.)

*John W. Hollis* for respondent. The court did not err on the question of damages in the submission of the case to the jury. (*Sheldon* v. *Baumann*, 45 N. Y. Supp. 1016; *Steenburgh* v. *McRorie*, 113 N. Y. Supp. 1118; *Allaback* v. *Utt*, 51 N. Y. 651.)

KELLOGG, J. Henry M. Pickle and Bertha E. Pickle, originally named as plaintiffs herein, were the grandfather and grandmother of Vernon Owen Pickle, an infant. They had legally adopted the child upon his abandonment by his mother. Several years later, the mother, enlisting the services of the defendant, a county Sheriff, caused the child to be abducted from the possession of his foster parents. The defendant, employing violence and exhibiting a reckless defiance of the rights of the lawful custodians, actively aided in procuring the abduction. The child, who was then five and one-half years

of age, was given over by the defendant into the possession of the mother. This action was thereupon brought to recover damages from the defendant for the injuries inflicted upon the foster parents by the abduction. On the trial the action was dismissed as to Bertha Pickle, the grandmother, and permitted to continue in the name of Henry M. Pickle, the grandfather and foster father, as the sole plaintiff. In estimating damages the jury were permitted to consider the wounded feelings of the foster father, and to impose punitive damages upon the defendant.

An action of trespass for the abduction of a child was originally maintainable by a father where the child abducted was the son and heir, and not otherwise. (*Barham* v. *Dennis*, 2 Cro. Eliz. 770.) This was " by reason the marriage of his heir belongs to the father, but not of any other his sons or daughters; " and, although it had been adjudged that the writ of trespass lay " for a parrot, a popinjay, a thrush, and, as 14 Hen. 8 is, for a dog; the reason thereof is, because the law imputes that the owner hath a property in them," whereas " the father hath not any property or interest in the daughter, which the law accounts may be taken from him." Later it was held that an action of trespass was maintainable by a father *per quod servitium amisit* where a child old enough to do him service, other than the heir, was abducted. For the abduction of any other child the action did not lie. (*Gray* v. *Jefferies*, 1 Cro. Eliz. 55; *Hall* v. *Hollander*, 4 Barn. & Cress. 660.) In the latter case it was said: " It is clear that in cases of taking away a son or daughter, except for taking a son and heir, no action lies, unless a loss of service is sustained." (*Gray* v. *Jefferies*, *supra; Barham* v. *Dennis*, *supra.*) The mere relationship of the parties is not sufficient to constitute a loss of service." In the case of an injury inflicted upon a child, so immature that it was incapable of rendering service, the parent might have no remedy

against the person inflicting the injury. (*Hall* v. *Hollander, supra.*)

The principle that the abduction of a child, not the heir, or not capable of rendering service, was a wrong for which the law furnished no civil remedy, was not adopted without protest, nor has it received unqualified approval. Thus in *Barham* v. *Dennis* (*supra*) GLANVILLE uttered a strong dissent, saying: " For the father hath an interest in every of his children to educate them, and to provide for them; and he hath his comfort by them; wherefore it is not reasonable that any should take them from him, and to do him such an injury, but that he should have his remedy to punish it." Blackstone was of the opinion that for the abduction of a child, other than the heir, a father might maintain an action, stating that such a wrong was " remediable by writ of *ravishment* or action of *trespass vi et armis, de filio, vel filia, rapto vel abducto;* in the same manner as the husband may have it, on account of the abduction of his wife." (Bl. Comm. 140.) Judge COOLEY, referring to the holdings in *Barham* v. *Dennis* and *Hall* v. *Hollander,* has remarked: " This sometimes leads to results which are extraordinary, for it seems to follow, as a necessary consequence, that if the child, from want of maturity or other cause, is incapable of rendering service, the parent can suffer no pecuniary injury, and therefore can maintain no action when the child is abducted or injured." (Cooley on Torts, p. 481.) Judge COWEN, referring to the English rule that, for the consequences of an injury to an immature child, no remedy runs to the father, has said that he should regard it as quite questionable whether such a principle prevailed in this State. (*Hartfield* v. *Roper,* 21 Wend. 615.) It is to be noted, also, that Sir Frederick Pollock, without qualification, makes the broad statement: " The common law provided a remedy by writ of trespass for the actual taking away of a wife, servant, or heir, and perhaps younger child

also; " and follows the statement by the further assertion that an action of trespass *also* lies for wrongs done to a plaintiff's wife, or servant or child, regarded as a servant, whereby the society of the former or the services of the latter are lost, the language of the pleading being *per quod consortium,* or *servitium amisit.* (Pollock, The Law of Torts, p. 226.)

It is undoubtedly true that the gravamen of an action brought by a parent for the seduction of a daughter is loss of service. (*Moran* v. *Dawes,* 4 Cow. 412; *Clark* v. *Fitch,* 2 Wend. 459; *Hewitt* v. *Prime,* 21 Wend. 79; *Badgley* v. *Decker,* 44 Barb. 577; *Knight* v. *Wilcox,* 14 N. Y. 413; *Lipe* v. *Eisenlerd,* 32 N. Y. 229; *Lawyer* v. *Fritcher,* 130 N. Y. 239.) However, granted the showing of a loss of service, either actual or constructive, the parent may recover damages for his wounded feelings as well as damages imposed for punitive purposes. (*Ingersoll* v. *Jones,* 5 Barb. 661; *Cowden* v. *Wright,* 24 Wend. 429; *Clark* v. *Fitch, supra; Badgley* v. *Decker, supra; Lawyer* v. *Fritcher, supra.*) It is apparent that the grief of the parent, for which compensation in such a case may be given, arises not from the disability caused by the seduction, but from the dishonor of a daughter whose good fame is dear to him; that the wound to the parent's feelings is a direct injury inflicted at the moment of the commission of the wrong. Appreciating the anomaly that a compensable damage, directly inflicted, to be recoverable, is dependent upon proof of a logically immaterial fact, *i. e.,* a loss of service, the courts of this State have gone far in presuming the existence of such a loss. (*Badgley* v. *Decker, supra; Moran* v. *Dawes, supra; Hewitt* v. *Prime, supra; Clark* v. *Fitch, supra; Lipe* v. *Eisenlerd, supra.*) Moreover, many judges, although agreeing that, according to authority, the legal gravamen of such an action is loss of service, have frequently expressed their dissatisfaction with the established rule. Thus, in *Badgley* v. *Decker* (*supra*) it was said that, in

order to accommodate such an action to cases where the daughter rendered no service, " a presumed or a fictitious service is resorted to as the gravamen; " that in point of fact the real gravamen of the action is the mortification and disgrace of the family, and the wounded feelings of the parent.   In *Clark* v. *Fitch* (*supra*) it was said: " It is true indeed, ' and pity 'tis, 'tis true,' that this action is founded technically upon the supposed loss of service alone, the father and daughter being considered as standing in the relation of master and servant; " that " it would comport much better with common sense to say that a father, whose daughter has been seduced, shall maintain an action for the injury done to his wounded honor and his parental feelings."   In *Bedford* v. *McKowl* (3 Espinasse's Rep. 119), Lord ELDON said that while the action for seduction purported to be an action for loss of service, a jury might consider other matters. " They may look upon her as a parent losing the comfort as well as the service of her daughter, in whose virtue she can feel no consolation; and as the parent of other children, whose morals may be corrupted by her example." In *Grinnell* v. *Wells* (7 Man. & G. 1033), a case holding that a loss of service must always be alleged and proven, there is appended to the opinion of TINDAL, Ch. J., the following note: " It may be observed, however, that the *quasi* fiction of *servitium amisit* affords protection to the rich man, whose daughter occasionally makes his tea, but leaves without redress the poor man, whose child, as here, is sent, unprotected, to earn her bread amongst strangers."

Returning to the subject of abduction, we find no decisions by the courts of this country holding that, in actions to recover damages for the abduction of a child, the parent must allege and prove, as a condition of his recovery, a loss of the services of the child.   It is true that the Supreme Court of New Jersey, in the case of *Magee* v. *Holland* (27 N. J. L. 86), expressed the opinion

that it was the " established law " that loss of service must be shown. That case involved the abduction of three children of the ages from three to six. Notwithstanding the opinion expressed by the court, as to the general principle underlying all such cases, the court held that the jury was entitled to infer a loss of service, despite the tender ages of the children abducted. So far as the law of this country has become " established " by the decisions of its courts, it would seem that the general principle is contrary to that stated in the New Jersey case. In South Carolina it has been held that the action is maintainable without proof or allegation of loss of service. (*Kirkpatrick* v. *Lockhart*, 1 Bre. Law [S. C.] [1807], p. 654.) The court there said: " The true ground of action is the outrage and deprivation; the injury the father sustains in the loss of his child; the insult offered to his feelings; the heart-rending agony he must suffer in the destruction of his dearest hopes, and the irreparable loss of that comfort and society which may be the only solace of his declining age." In North Carolina the same holding was made in *Howell* v. *Howell* (162 N. C. 283), the court stating that the theory that such an action was grounded on a loss of service was " an outworn fiction." In Kentucky it has been stated that in an action for the abduction of a child it is immaterial whether or not the abducted child rendered services to his parents. (*Soper* v. *Igo, Walker & Co.*, 121 Ky. 550.) In Ohio it has been held that a complaint to recover damages for the abduction of a child is sufficient if it alleges that the parent was thereby deprived of his possession and services, although it did not allege an ability on the part of the child to serve its parent. (*Clark* v. *Bayar*, 32 Ohio St. 299.) In Iowa it has been broadly stated " that the father has a right to the care and custody of his minor children, and to superintend their education and nurture, is a proposition that does not admit of controversy. And where he is deprived of such

care and custody, and of this superintendence, by the, act of another, he has his remedy, by proper action, against such person, is equally clear." (*Everett* v. *Sherfey*, 1 Iowa [Cole's ed.], 356.)

The cases of *Dennis* v. *Clark* (2 Cush. 347) and *Moritz* v. *Garnhart* (7 Watts [Penn.], 302), although not directly in point, furnish instructive side-lights upon the question involved. The former case involved an injury to a boy so young that he was incapable of rendering any service to his father, inflicted by a mischievous animal belonging to a third person. In an action by the father to recover his expenses in the care and cure of the boy, from the third person, it was held that a loss of service need not be shown. Referring to the proposition that in seduction cases, unless there is a loss of services, even the expenses of caring for a seduced daughter during confinement are not recoverable, METCALF, J., said: "But it is equally true, that the loss of service is not the measure of damages, in such actions; that the legal gravamen is not the real gravamen; and that the loss of service is a fiction resorted to for the purpose of giving compensation for the actual injury." The latter case was an action by the grand-father of an illegitimate child, born to his daughter, to recover damages for its abduction from his possession. GIBSON, Ch. J., remarked that it was undoubtedly the common-law rule that such an action "could not be maintained on the relation of master and servant, unaided by that of parent and child, without proof of service by hiring." Nevertheless it was held that, in the absence of a showing of either relationship, a recovery might be had in the case presented. The Chief Justice remarked: "So late as *Barham* v. *Dennis*, Cro. Eliz. 770, a father had no remedy for the abduction of any of his children but the heir at law; at this day, by means of a servitude almost fictitious, power is put into his hands to redress almost every injury that may be done to them."

In the absence of any New York authority upon the

subject; in the default of any decision to the contrary in the courts of our sister States; in view of the anomalies concededly presented in the holdings in the analogous cases of seduction; we are disposed to hold broadly, as have the courts of North and South Carolina, that in actions for the abduction of immature children from the custody of their lawful custodians, parents or foster parents, no loss of service need be alleged or proven; that for the direct injury done, a direct recovery may be had without resort to the fiction that a loss of service has been occasioned. It would be a reproach to our legal system if, for the abduction of a child in arms, no remedy ran to its parent, although " for a parrot, a popinjay, a thrush " and even " for a dog " an ample remedy is furnished to their custodian for the loss of their possession.

It is true that for a loss of service resulting from a physical injury to a child, other than through seduction, neither damages for wounded feelings nor punitive damages may be awarded to a parent. (*Whitney* v. *Hitchcock*, 4 Den. 461; *Tidd* v. *Skinner*, 225 N. Y. 422.) In the first of these cases the child was disabled by an assault so that she could not work. In the second, the services of a boy were withdrawn from his parent through the weakening influence of a drug, supplied by the defendant. In cases of that character brought by a parent " the original act is not the cause of his action, but the consequence upon it, viz., the loss of his service is the cause of his action; for be the battery greater or less, if the master doth not lose the service of his servant, he shall not have an action." (*Robert Mary's Case*, [1612] 9 Coke's Rep. 113.) The rule is otherwise where the damage is not consequent but direct; where it results, not intermediately from a physical injury to a third person, as a child, wife or servant, but immediately from the wrong itself, as in case of the enticement away of a servant (*Smith* v. *Goodman, Howell & Co.*, 75 Ga. 198;

*Bixby* v. *Dunlap,* 56 N. H. 456); the enticement away of a slave (*Tyson* v. *Ewing,* 3 J. J. Marsh. [Ky.] 186); as in an action for criminal conversation with a wife (*Matheis* v. *Mazet,* 164 Penn. St. 580); or for the alienation of a husband's affection (*Williams* v. *Williams,* 20 Col. 51). In all these cases, as in the cases of seduction which we have cited, damages for wounded feelings and punitive damages may be awarded. That they may be awarded in actions brought by a father for the abduction of a child was definitely held in *Magee* v. *Holland* (*supra*). That decision was cited with approval in *Stowe* v. *Heywood* (7 Allen, 118), the court saying: " In an action for forcible abduction of children, the father is entitled to damages for the injury done to his feelings." We hold that they were recoverable here, and that no error was committed when the trial judge instructed the jury that such damages might be considered and awarded by it.

The judgment should be affirmed, with costs.

POUND, CRANE, LEHMAN, O'BRIEN and HUBBS, JJ., concur; CARDOZO, Ch. J., not sitting.

Judgment affirmed.