103 So.2d 818

John H. ARMSTRONG et al.

v.

Maggie McDONALD.

I Div. 754.

Court of Appeals of Alabama.

June 10, 1958.

486

C. LeNoir Thompson, Bay Minette, for appellant.

Telfair J. Mashburn, Jr., Bay Minette, for appellee.

CATES, Judge.

Though at times disappointed in his hope, a parent has the right to expect the personal services of an unmarried minor child.

The Armstrongs persuaded Maggie McDonald's minor son, Troy Young (also known as Troy McDole) to leave his home with her in Baldwin County, Alabama, to go to Maryland as a migratory farm worker without any express consent by the mother to the boy's going on this particular trip.

While in Maryland Troy, in his off time, went swimming and drowned. His mother spent some $700 to bring his body back and for the funeral.

Maggie McDonald brought this action claiming $50,000 because the elder Armstrong, through his agent, Armstrong the younger, took her son away without her consent to Maryland, where he drowned, causing her to be deprived of his services and society and expense to bring back and bury his body.

No demurrer was taken to the complaint, nor was any exception taken to the oral charge.

The jury brought in a general verdict for the plaintiff, assessing her damages at $700. Motion for new trial was denied.

The grounds for new trial and the assignments of error are confined, with two exceptions, to claims that the verdict was contrary to the weight of the evidence. The exceptions are (1) that the plaintiff failed to show her son was taken away for a hazardous occupation, and (2) that negligence by the defendants was neither alleged nor shown.

The tort here involved is discussed in general terms in Restatement, Torts, § 766:

"* * * one who, * * * induces * * * a third person not to (a) perform a contract with another, or

* * * * * *

"is liable to the other for the harm caused thereby."

and more pertinently in Torts, § 700:

"One who, without a privilege to do so,

"(a) abducts a minor child, or

"(b) induces it to leave its home with knowledge that the parent has not consented, or

"(c) with knowledge that it has left its home and that the parent is unwilling that the child should be absent, induces it not to return thereto or prevents it from so doing, is liable to the

parent, who is legally entitled to the child's custody."

In 67 C.J.S. Parent and Child § 101, we find:

"A parent who has the right to the custody, control, and services of a minor child may maintain an action for damages against anyone who unlawfully entices away or harbors such child, * * *

"* * * This right of action is not limited to cases where the enticing away is for immoral purposes or where the child is the heir or oldest son. On the other hand, it has been held that there is no right of action where no fraud, force, or persuasion has been used.

"Where the enticement has been for the purpose of marriage, it has been held that there can be no recovery after the marriage, if it is a legal one."

There was at common law a presumption of the child being in the service of the parent while in the family, Gandy v. State, 81 Ala. 68, 1 So. 35, thus the damages of the father for the seduction of the daughter lay not in the family dishonor but stemmed from interference with a quasi-fictitious master-servant standing, Young v. Young, 236 Ala. 627, 184 So. 187.

In Steward v. Gold Medal Shows, 244 Ala. 583, 14 So.2d 549, our Supreme Court modified the master-servant fiction as the basis for the assessment of damages in the abduction of a minor child and admitted the assessability of punitive damages for the outrage to the parent as well as compensatory damages.

This view accords with the so-called modern view—thus in Restatement, Torts, § 700, comment g, we find:

"The parent can recover for the loss of society of his child and for his emotional distress resulting from its abduction or enticement. If there has been a loss of service or if the child, though actually not performing service, was old enough to do so, the parent can recover for the loss of the service which he could have required of the child during the period of its absence. He is also entitled to recover for any reasonable expenses incurred by him in regaining custody of the child and for any reasonable expenses incurred or likely to be incurred in treating or caring for the child if it has suffered illness or other bodily harm as a result of the defendant's tortious conduct."

In Pickle v. Page, 252 N.Y. 474, 169 N.E. 650, 651, 72 A.L.R. 842, the leading case on this doctrine, we find:

"An action of trespass for the abduction of a child was originally maintainable by a father where the child abducted was the son and heir and not otherwise. Barham v. Dennis, 2 Cro. Eliz. 770. This was 'by reason the marriage of his heir belongs to the father, but not of any other his sons or daughters;' and, although it had been adjudged that the writ of trespass lay 'for a parrot, a popinjay, a thrush, and, as 14 Hen. 8 is, for a dog; the reason thereof is, because the law imputes that the owner hath a property in them,' whereas 'the father hath not any property or interest in the daughter, which the law accounts may be taken from him.' Later it was held that an action of trespass was maintainable by a father per quod servitium amisit where a child old enough to do him service, other than the heir, was abducted. For the abduction of any other child the action did not lie. Gray v. Jefferies, 1 Cro.Eliz. 55; Hall v. Hollander, 4 Barn. & C. 660. In the latter case it was said: 'It is clear that in cases of taking away a son or daughter, except for taking a son and heir, no action lies, unless a loss of service is sustained, Gray v. Jefferies, supra; Barham v. Dennis, supra. The mere relationship of the parties is not sufficient

to constitute a loss of service.' In the case of an injury inflicted upon a child so immature that it was incapable of rendering service, the parent might have no remedy against the person inflicting the injury. Hall v. Hollander, supra.

"The principle that the abduction of a child, not the heir, or not capable of rendering service, was a wrong for which the law furnished no civil remedy, was not adopted without protest, nor has it received unqualified approval. Thus in Barham v. Dennis, supra, Glanville uttered a strong dissent, saying: 'For the father hath an interest in every of his children to educate them, and to provide for them; and he hath his comfort by them; wherefore it is not reasonable that any should take them from him, and to do him such an injury, but that he should have his remedy to punish it.' Blackstone was of the opinion that for the abduction of a child, other than the heir, a father might maintain an action, stating that such a wrong was 'remediable by writ of ravishment or action of trespass vi et armis, de filio, vel filia, rapto vel abducto; in the same manner as the husband may have it on account of the abduction of his wife.' Bl.Comm. 140. Judge Cooley, referring to the holdings in Barham v. Dennis and Hall v. Hollander, has remarked: 'This sometimes leads to results which are extraordinary, for it seems to follow as a necessary consequence that, if the child from want of maturity or other cause is incapable of rendering service, the parent can suffer no pecuniary injury, and, therefore, can maintain no action when the child is abducted or injured.' Cooley on Torts, p. 481. Judge Cowen, referring to the English rule that, for the consequences of an injury to an immature child, no remedy runs to the father, has said that he should regard it as quite questionable whether such a principle prevailed in this state. Hartfield v. Roper, 21 Wend. 615, 34 Am.

Dec. 273. It is to be noted, also, that Sir Frederick Pollock, without qualification, makes the broad statement: 'The common law provided a remedy by writ of trespass for the actual taking away of a wife, servant or heir, and perhaps younger child also;' and follows the statement by the further assertion that an action of trespass *also* lies for wrongs done to a plaintiff's wife, or servant or child, regarded as a servant, whereby the society of the former or the services of the latter are lost; the language of the pleading being per quod consortium, or servitium amisit. Pollock, The Law of Torts, p. 226.

\* \* \* \* \* \*

"Returning to the subject of abduction, we find no decisions by the courts of this country holding that, in actions to recover damages for the abduction of a child, the parent must allege and prove, as a condition of his recovery, a loss of the services of the child. It is true that the Supreme Court of New Jersey, in the case of Magee v. Holland, 27 N.J.L. 86, 72 Am.Dec. 341, expressed the opinion that it was the 'established law' that loss of service must be shown. That case involved the abduction of three children of the ages from 3 to 6. Notwithstanding the opinion expressed by the court, as to the general principle underlying all such cases, the court held that the jury was entitled to infer a loss of service, despite the tender ages of the children abducted. So far as the law of this country has become 'established' by the decisions of its courts, it would seem that the general principle is contrary to that stated in the New Jersey case. In South Carolina it has been held that the action is maintainable without proof or allegation of loss of service. Kirkpatrick v. Lockhart, 2 Brev., S.C., 276. The court there said: 'The true ground of action is the outrage, and deprivation; the injury the father sustains in the loss of his child; the in-

sult offered to his feelings; the heart-rending agony he must suffer in the destruction of his dearest hopes, and the irreparable loss of that comfort, and society, which may be the only solace of his declining age.' In North Carolina the same holding was made in Howell v. Howell, 162 N.C. 283, 78 S.E. 222, 45 L.R.A.,N.S., 867, Ann.Cas. 1914A, 893, the court stating that the theory that such an action was grounded on a loss of service was 'an outworn fiction.' In Kentucky it has been stated that in an action for the abduction of a child it is immaterial whether or not the abducted child rendered services to his parents. Soper v. Igo, Walker & Co., 121 Ky. 550, 89 S.W. 538, 1 L.R.A.,N.S., 362, 123 Am.St.Rep. 212, 11 Ann.Cas. 1171. In Ohio it has been held that a complaint to recover damages for the abduction of a child is sufficient if it alleges that the parent was thereby deprived of his possession and services, although it did not allege an ability on the part of the child to serve its parent. Clark v. Bayer, 32 Ohio St. 299, 30 Am.Rep. 593. In Iowa it has been broadly stated 'that the father has a right to the care and custody of his minor children, and to superintend their education and nurture, is a proposition that does not admit of controversy. And where he is deprived of such care and custody, and of this superintendence, by the act of another, he has his remedy, by proper action, against such person, is equally clear.' Everett v. Sherfey, 1 Iowa 356."

See Meredith v. Buster, 209 Ky. 623, 273 S.W. 454 (abduction of daughter—claim for loss of services and companionship, for grief, humiliation, mental anguish and expense of bringing her back home *held* good on demurrer).

In Brown v. Brown, 338 Mich. 492, 61 N.W.2d 656, 659, a mother (who by statute presumptively on divorce gains custody of the children under 12) recovered $150,-000 against her former in-laws who had aided and conspired with her former husband in taking her two young children to South Africa, causing her to become very ill due to worry. As to liability and damage, the Michigan court said:

"Appellants claim in their appeal that the cause of action asserted by plaintiff in count two of her declaration, conspiracy to deprive a parent of custody of her children, is not recognized in Michigan. In Oversmith v. Lake, 295 Mich. 627, 295 N.W. 339, 341, defendants were held liable for the abduction and false arrest of plaintiff's minor children. * * *

\* \* \* \* \* \*

"The damages recoverable in such an action are not limited to the loss of services. The parent wrongfully deprived of the custody of his child may recover for the loss of society of his child and for the emotional distress resulting from the abduction. Pickle v. Page, 252 N.Y. 474, 169 N.E. 650, 72 A.L.R. 842; Steward v. Gold Medal Shows, 244 Ala. 583, 14 So.2d 549; Restatement of the Law, Torts, § 700, comment g."

■ Hence, we do not consider this a wrongful death action such as might be brought under Code 1940, T. 7, § 119: here, the plaintiff complains of the taking away, not of the killing. This is an action on the case according to I Street, Foundations of Legal Liability, pp. 265–268.

We have a misdemeanor, Code 1940, T. 26, § 332, providing in part:

"Any person who knowingly * * * entices away, or induces any minor to leave the service of any person to whom such service is lawfully due, without the consent of the party * * to whom such service is due, * * * must, on conviction, be fined, * * *"

Moreover, our public policy stringently regulates emigrant labor agents and those who publicize their recruiting, Code 1940, T. 51, §§ 513–521, inclusive.

**490**

However, in view of the unquestioned authority of the Steward case, we find it unnecessary to explore the extent to which a violation of the criminal law confers a private right of action; though in passing we note Hardie-Tynes Mfg. Co. v. Cruse, 189 Ala. 66, 66 So. 657, 661 wherein it is said:

"It is hardly necessary to say that every criminal act which injures the person or property of another is also a civil tort, redressible by the courts, * * *"

See 1 C.J.S. Actions § 12. In Pearl Assur. Co. v. National Insurance Agency, 150 Pa.Super. 265, 28 A.2d 334, it was held that express statutory language is required for a criminal enactment to absorb and pre-empt a pre-existing common law tort. In Odell v. Humble Oil & Refining Co., 10 Cir., 201 F.2d 123, 127, Judge Huxman (in denying jurisdiction for lack of a $3,000 maximum recovery), after analyzing the scope of the derivative tort doctrine and its implications and limitations, writes:

"We accordingly conclude from a consideration of the authorities that where a penal act is passed for the benefit of a class a violation of the criminal statute resulting in injury to one of such class gives him a cause of action which he may assert in any court of competent jurisdiction, notwithstanding that no reference is made to such a right in the act, and also that where a cause of action exists at common law for the commission of a tort the passage of a penal statute in the interest of the public and providing for sanctions for its violation does not in the absence of clear language to the contrary wipe out such pre-existing common law action; but that where a penal statute is passed in the interest of the public, the commission of a violation of which did not give one injured thereby a cause of action at common law, no such cause of action arises in the absence of clear language evidencing a congressional intent to give one injured thereby a cause of action in addition to the sanctions provided for its violation."

 The defendants took issue without raising the lack of any averment of negligence by way of demurrer; nor did they request any jury instruction on this theory. Even if we were to concede the wrong complained of required a showing of negligence, we should nevertheless consider the appellants precluded from raising it.

Nor do we think that a show of taking away into a hazardous occupation is necessary for this tort. However, if it were, it avails the appellants naught for the trial judge orally charged that it was necessary so to prove, and also to prove that the boy lost his life in pursuance of a hazardous occupation or while in line of his duties. The plaintiff having been required to prove more than the law requires, the defendants will not be heard to complain of error which might have aided them.

Affirmed.