JOHN A. LIPE v. PETER O. EISENLERD.

Where a daughter twenty-nine years of age resides with her father, and, by a tacit understanding, continues to perform certain domestic services, and is supplied by him with food and clothing, the relation of master and servant exists.

Such daughter being seduced while such relation exists, the father may maintain an action for damages therefor, though the daughter was temporarily absent at the time of the seduction.

The rule as to damage is the same, whether the daughter be a minor or of full age.

And the plaintiff is not limited in his recovery to mere compensatory damages; but may recover exemplary damages, when he is so connected with the party as to be capable of receiving injury through her dishonor.

Although the daughter could have terminated the relation at any time, without incurring any liability, third persons were bound to respect it while it existed; and any illegal act by which the rights of the father were interfered with to his detriment, was a legal wrong for which the law gives him redress.

ACTION for the seduction of the plaintiff's daughter and servant. She was about twenty-nine years of age, and resided generally in the family of her father, who was a farmer, performing such services about the dairy and house-keeping as are usual under such circumstances, and being provided for and supported by him. The defendant kept a tavern, and was a practicing physician, living about three-quarters of a mile from the plaintiff. The seduction took place at the defendant's house, on the 5th January, 1857. The defendant had a ball at his tavern at Christmas, and also on New Year's day, and the daughter, at the request of the defendant, and with the express permission of her father, went to the defendant's to assist in preparing for the first dance, and cleaning up after it was over. She remained until after the ball on New Year's, and some days afterward, assisting in the same manner as on the first occasion; and remaining after that at the defendant's request, and on his promise to invite some female acquaintances to bear her company. She was at the defendant's altogether about eleven days, the intercourse taking place five days before she returned to her father's. It did not appear that any wages were expected, and none were paid. Her father, sisters and other neighbors assisted in preparing for the entertainments,

and certain table furniture and refreshments were furnished from her father's house gratuitously, so far as appeared. The consequence of the connection was the birth of a child, which took place at her father's in October following, she having been ill in consequence of her pregnancy some time before her delivery. She was cared for at the expense of her father.

A witness for the plaintiff, one Fox, testified on cross-examination that he was under indictment for killing his father, but he said the killing was accidental.

The defendant's counsel moved for a nonsuit on the ground that the relation of master and servant was not established, and excepted to the ruling by which the motion was denied. After giving evidence on his part, which embraced alleged declarations of hers while at the defendant's, that she was her own master, which she denied any recollection of having made, the defendant renewed the motion, which was again denied, and he excepted. For the purpose, apparently, of having the question determined as one of law, the defendant requested the judge to rule that upon the evidence the relation of master and servant *did* exist between the plaintiff and his daughter, and excepted to the decision of the judge declining so to decide.

The judge charged that if the jury should believe from the evidence that there was an agreement between the plaintiff and his daughter that she should perform services for him upon the consideration that he should furnish her with a home and support, and that she went to the defendant's house by the consent of her father, with the intent to return to her father's house, and that such agreement remained in force at the time of the seduction, the plaintiff was entitled to maintain the action, although the daughter was over twenty-one years of age, and that the right to exemplary damages was not affected by the fact that the relation existed by contract, inasmuch as the plaintiff was her father. The defendant's counsel excepted to both propositions of the charge. He declined to charge, as requested, that the fact of the witness, Fox, being under an indictment as mentioned affected his credit, to which refusal the defendant also

excepted.   The verdict was for the plaintiff for $1,000.   The defendant appealed here from the judgment of affirmance rendered at the general term.

*R. W. Peckham, Jr.*, for the appellant.

I. The judge erred in refusing to nonsuit the plaintiff, because, when he rested his case, the uncontradicted proof showed that the plaintiff was neither, *de facto or de jure*, the master of Margaret Lipe, so as to maintain this action.

On the 5th of January, 1857, the time of the alleged seduction, the plaintiff had no right, in law or otherwise, to command or reclaim the services of Margaret Lipe, she being of age, and in the actual employment of the defendant at the time. (*Nicholson* v. *Stryker*, 10 Johns., 115, 117; *Bartley* v. *Ritchmeyer*, and cases cited in 4 N. Y., 38; *Miller* v. *Thompson*, 1 Wend., 447; *Dunn* v. *Wycoff*, 3 Seld., 191; *George* v. *Van Horn*, 9 Barb., 523.)

II. The court erred in refusing to charge the jury that the plaintiff, not being the master of Margaret Lipe *de jure*, she being 29 years of age when the alleged seduction took place, and not in his service for any stated or specified time, the plaintiff was entitled to compensatory damages only, if any at all. ( *Whitney* v. *Hitchcock*, 4 Denio, 461.)

*John H. Reynolds*, for the respondent.

I. There was sufficient evidence to go to the jury upon the question whether, at the time of the seduction, the relation of master and servant existed between the plaintiff and his daughter, and the motion for a nonsuit was properly denied.

The relation of master and servant being necessary to entitle the plaintiff to recover, there need be no express contract for service proved, or any important amount of value. (2 Greenl. Ev., § 572; *Bennett* v. *Alcott*, 2 T. R., 166; *Maunder* v. *Venn*, 2 M. & Malk., 323; *Bartley* v. *Ritchmeyer*, 4 Comst., 38.)

The relation of master and servant existing, it is immaterial whether the seduction took place at home or abroad; whether she was a minor or of full age.   The smallest de-

gree of service will suffice to maintain the action. (2 Greenl. Ev., §§ 572, 573; *Fores* v. *Wilson,* 1 Peake, 55; *Harper* v. *Lufflin,* 7 B. & C., 387; *Villepigue* v. *Shular,* 3 Strobh., 462; *Carr.* v. *Clark,* 2 Chitty, 261, ABBOTT, J.; *Blaymire* v. *Hayley,* 6 M. & Wels., 56; *Manville* v. *Thompson,* 2 Car. & P., 304.)

Where, from various facts proved, inferences and presumptions of fact are to be drawn, the question is for the jury.

II. The decision of the court that the question of the relation existing between the plaintiff and Margaret Lipe must go to the jury was correct.

The instructions to the jury as to damages were strictly accurate. They were not, in estimating the plaintiff's damage, to be restricted to the exact pecuniary loss of the plaintiff. (*Bartley* v. *Ritchmeyer,* 4 Comst., 38 to 45; *Dain* v. *Wyckoff,* 3 Seld., 191; Mayne on Damages, 284, 285; 92 Law Library, 256; *Fulledge* v. *Wade,* 3 Wilson, 18, per WILMOT, Ch. J.; *Bedford* v. *McKowl,* 3 Esp., 119, per Lord KENYON; *Southernwood* v. *Ramsden,* Selw. N. P., 1106; *Andrews* v. *Askey,* 8 C. & P., 7.)

III. There was no error committed on the trial in the admission or rejection of evidence.

DENIO, Ch. J. The plaintiff's daughter being above the age of twenty-one years at the time she was seduced, and no express contract for service between her and her father being proved, the question arises, if that can now be considered a question, whether the relation of master and servant, in the sense required to sustain the action, existed between them. I lay out of view, for the moment, the circumstance that she was at the defendant's house at the timeof the intercourse, assuming that to have been accidental, and not of such a character as to interrupt the relation which she habitually sustained toward the plaintiff. As father, he had no right to claim her services against her will, and he was under no legal obligation to provide for her support. But by a tacit understanding, such as almost always exists in such cases, she continued to per-

form such service in his household as she was capable of, and such as were required; and on his part, he supplied her with food, clothing and lodging, suitable to her condition and wants. Either party could put an end to the arrangement at pleasure; but, at the time of the seduction, neither had elected to do so, and it then existed in its full force. Although the daughter could have broken it off without incurring any legal liability, third persons had no such right, but were bound to respect it; and any illegal act by which the right of the father, such as it was, to her services was interfered with to his detriment, was a legal wrong, for which the law affords redress. The right to damages in such cases is very analogous to that of a plaintiff in slander, for words not actionable in themselves, but by the speaking of which the plaintiff has been deprived of employment or hospitalities, or some other advantage, which no one would have been bound to provide, but which naturally would have been furnished but for the wrongful act of the defendant. But I need not enlarge upon the theory of the plaintiff's right to sustain the action, since it has been repeatedly adjudged that it would lie under similar circumstances. The precise point was presented in *Bennett* v. *Alcott* (2 Term, 166.) It was a suit by the father for the seduction of his daughter, who was over thirty years of age, but lived with him, and occasionally did acts of service, though no contract between them was proved. The plaintiff had a verdict for £200. A motion to set aside the verdict was denied. BULLER, J., said, "In actions of this kind the slightest evidence is sufficient; even milking cows. Here, instances of actual service were proved, and, therefore, it is immaterial whether the daughter was of age or not. Neither is it material whether the servant be or be not hired for a year, or whether she has any wages; it being sufficient that she is a servant *de facto.*" *Edmonson* v. *Matchell*, in the same book (p. 4), was a case in which an aunt brought the action for debauching her niece, who lived with her as a servant, without any contract appearing. The plaintiff recovered, and a new trial was denied. Some doubt was expressed as to the measure of damages, but none in respect to the right

to maintain the action. *Irvin* v. *Dearman* (11 East, 23), was an action for the seduction of the plaintiff's adopted daughter. The circumstances precluded the idea of a contract, the plaintiff having taken the female into his family to bring up, from motives of humanity, and on account of his friendship for her deceased father. The question arose upon the amount of the verdict, exemplary damages having been given. It was held that they were properly allowed. Where the party seduced was a married woman, living separate from her husband, at the house of her father, for whom she performed various acts of service, it was held that the action was maintainable. By her marriage she was emancipated, and she was, without doubt, over age, as the case states she had been separated from her husband eight years. It was argued by the defendant's counsel that she could not make a contract of service on account of her coverture, and no express contract was proved. Lord TENTERDEN observed, "such contracts are, no doubt, liable to be defeated at the will of her husband. He may put an end to that relation of master and servant; but unless he interferes, it by no means follows that such a relation may not exist, especially as against third persons who are wrongdoers. It appears to me that such a relation might and indeed did exist in this case, and that in the absence of any interference by the husband, it is not competent for the husband to set up his rights as an answer to the action." (*Harper* v. *Luffkin*, 1 Barn. & C., 387.) In *Marvel* v. *Thomson* (2 Car. & P., 303), the action was by an uncle for the seduction of his niece, who lived with him, and the plaintiff recovered without any proof of a contract. This places the doctrine on the ground on which I have supposed it ought to rest. It is not necessary that the arrangement by which the relation is established should have any permanent binding force between the parties to it. If it exist in fact, and the immediate parties are acting under it at the time of the seduction, however imperfect its obligation may be, the defendant, who by his wrongful act has interrupted it, cannot set up that it was liable to be revoked at any time without the consent of the master. The particular

point involved in the case under consideration, was also decided against the defendant in *Moran* v. *Dawes* (4 Cow., 412).

I have not thus far taken into account the circumstance that the daughter was at the defendant's house when the intercourse took place. I am of opinion, upon the evidence, that it was merely temporary, and in the nature of a visit, and that it did not at all affect the relation which subsisted between the plaintiff and his daughter. It appears that a considerable number of the neighbors of the plaintiff assisted the defendant in preparing for the entertainments which he gave at his house, in the enjoyment of which I presume they were all to participate. The plaintiff's daughter was one of these. She remained longer than the others, but her staying was not in any other character than the one in which she went there in the first instance; and there is some reason to suppose that the defendant induced her to remain for the purpose which he finally accomplished. If the question were at all doubtful whether the daughter, by these acts, entered into the service of the defendant, so as to bring the case within the principle of *Barbay* v. *Ritchmeyer*, relied on by the defendant (4 Comst., 38), it was proper to submit it to the jury. This the judge did by instructing them that to maintain the action it must appear that the agreement between the father and daughter had not been annulled, but was in force at the time of the seduction. In a late case in the English Common Pleas, a similar defense was set up, where the facts were far stronger against the continuance of the relation than in this case. The action was for seducing the plaintiff's daughter, and it appeared that she usually resided with her parents, but, at the defendant's request, and with the consent of the plaintiff, she went and resided at the defendant's house for a month, to attend to his business as a shopkeeper during the absence of his wife, and the defendant promised, before she went, to pay her something for so doing, and when she came away, the defendant's wife gave her eight shillings. During her stay there the defendant seduced her. It was said by the judge that her absence from her father's was merely temporary, and in the nature of a visit, and that

the payment was in the character of a gratuity, and that the circumstance was not inconsistent with her remaining the servant of her father, the plaintiff. (*Griffiths* v. *Teetgen*, 28 Eng. L. & E., 371.)

The defendant's counsel upon this branch of the case relies ·upon *Nicholson* v. *Stryker* (10 Johns., 115). Like the present, it was an action for the seduction of a daughter of the plaintiff, who was twenty-nine years old. It is said in the statement of facts that "she lived with her father, the plaintiff, until a short time before her misfortune. She went to one Layton's and returned home, and, after a week, went back to Layton's to work, and while there her connection with the defendant happened." The child was born at her father's house. The court held that as the daughter was over twenty-one, and not in the actual service of her father when she had the connection with the defendant, the plaintiff could not recover. There is a marked distinction between the character of the absence in the case under consideration and that in the case cited. Though the facts are not very clearly stated, it is sufficiently apparent that she was at work as a hired servant of Layton.

Finally, it is urged by the defendant's counsel that only compensatory damages should have been allowed. The judge refused so to direct the jury, and I think he was right. The object of the action in theory, is to recover compensation for the loss of the services of the person seduced. This is so far adhered to that there must be a loss of that kind or the action will fail; but when that point is established the rule of damages is a departure from the system upon which the action is allowed. The loss of service is often merely nominal, though the damages which are recovered are very large. It is too late to complain of this as a departure from principle, for it has been the law of this State and of the English courts for a great many years. But it is argued that it does not apply except in cases in which the father sues for the loss of the services of his infant daughter, and where he makes title by means of the parental relation. This seems to me an unreasonable refinement. Here the father is the plain-

tiff, and the money recovered will belong to him precisely as it would if the daughter were under age. The mortification and disgrace, and the injury to the sentiments and affections are of the same character, and are not likely to be essentially different in degree. The delinquency of the defendant is in no respect different. Why should damages beyond a strict pecuniary compensation be given in one case and withheld in the other? I can see no reason for it whatever. The action, considered as one to redress a moral outrage and punish libertinism under the form of a remedy for the loss of manual services, is peculiar and anomalous. This case is within all the reasons which have led to the exceptional course of decision, and I see no authority for distinguishing it from the rule now well established. There are, moreover, several cases which countenance the ruling upon the trial. In *Manvel* v. *Thomson*, already mentioned, where the action was by an uncle for the seduction of his niece, there was very slight proof of services, and yet the recovery was for £400. In *Edmonson* v. *Machell*, where the person seduced was also the plaintiff's niece, the case of the plaintiff was aggravated by circumstances of ill treatment, and the judge charged that the aunt stood in *loco parentis;* and, as in actions brought by a father for deflowering his daughter, whereby he lost her services, large damages were often given, he thought the case bore an analogy to that. The verdict was for £300, and the court refused to grant a new trial, though the point was made that the large damages were given for the injury to the niece herself, and she had brought a separate action. Some doubt was expressed by the court as to the correctness of the ruling by which damages were allowed to be given for injuries personal to the niece, and the fact that she had consented to withdraw her own action seems to have influenced the judgment denying the new trial. In the case referred to where the female who was seduced was the adopted daughter and servant of the plaintiff, the point was expressly taken that exemplary damages had been given where the plaintiff was no relation at all to the victim of the seduction. But the Chief Justice — Lord ELLENBOROUGH — said that this kind

of action had always been considered *sui generis,* — where a person standing in the relation of a parent was permitted to recover damages for an injury of this nature, *ultra* the mere loss of service; and that although it was difficult to reconcile it with principle, the practice had become inveterate and could not be shaken; that the plaintiff who had adopted and bred up the daughter of a friend and comrade was entitled to maintain the action in a court for the loss of service, to him aggravated by the injury done to the object on whom he had thus placed his affection.

The defendant's point is that where the required relation is established by convention, only compensatory damages can be given, and that the rule authorizing another measure of recovery should be limited to cases where the plaintiff makes title solely through the parental relation. The true rule, I think, is that the plaintiff's right to the services may be made out in either way, and that when established, so that the action is technically maintainable, the court and jury are to consider whether the plaintiff, on the record, is so connected with the party seduced as to be capable of receiving injury through her dishonor. A mere master, having no capacity to be injured beyond the pecuniary worth of the services lost, should undoubtedly be limited, in his recovery, to the value of these services. But the case of this plaintiff, as has been mentioned, is quite different. Hence, there was no error in the ruling to which exception was taken.

The judge was also correct in refusing to charge that the witness Fox was impeached by the fact that he was under an indictment. The court had no power to try the issue upon the indictment, and until the witness was found guilty by the petit jury, the law presumes him to have been innocent. (See *The People* v. *Gay,* 3 Seld., 378.)

I am in favor of affirming the judgment appealed from.

Judgment affirmed.

(See dissenting opinion by CAMPBELL, J., at the end of this volume.)