## EISENLORD *v.* CLUM *et al.*

(*Supreme Court, General Term, Third Department.* July 2, 1888.)

NEW TRIAL—WHEN GRANTED—SUFFICIENCY OF EVIDENCE.

　　Where plaintiff sues to recover certain land as the legitimate son and only heir of one deceased, and introduces the record of an action by his mother's father, four months after his birth, against deceased, for seduction, in which his mother testified she was not married, and in which judgment was rendered for plaintiff, the court properly set aside a verdict for plaintiff.

Appeal from circuit court, Montgomery county; FISH, Justice.

This was an action of ejectment by John P. Eisenlord for lands of which Dr. Peter O. Eisenlord died seized. The lands were situate in Montgomery county. The jury rendered a verdict in favor of the plaintiff. Thereupon a motion was made by the defendants upon the minutes, at the same circuit, to set aside the verdict and grant a new trial. Mr. Justice FISH, who presided, granted the motion, upon the ground, as stated by him in his opinion, "that the verdict is not sustained by the evidence, but is contrary to and against the evidence." The evidence in this case was substantially a repetition of that which was given in the previous case in Fulton county, (*Eisenlord* v. *Eisenlord, ante*, 123.) In this case, however, the plaintiff was permitted to read in evidence the judgment roll in the seduction case of *Lipe* v. *Eisenlerd*. From the order granting a new trial plaintiff appeals.

Argued before LEARNED, P. J., and LANDON and INGALLS, JJ.

*A. J. Abbott*, for plaintiff. *George W. Smith*, for defendants.

LANDON, J. The learned trial judge set aside the verdict and granted a new trial, upon the ground that the verdict was against the clear weight of the evidence; that is, "contrary to the evidence." Code Civil Proc. § 999. The testimony, in his opinion, does not show that Dr. Eisenlord and Margaret Lipe were married in June, 1857, by Justice Mosher. We have read the testimony; and without the aids which the trial court had of witnessing the trial, and receiving those impressions respecting the truthfulness and reliability of witnesses which come from personal observation, we cannot resist the impression that the strong probabilities are that the story of the secret marriage is not reliable. In addition to the error which we have pointed out in the Fulton county case, and which was repeated in this, we observe that in this case the judgment record in the case of *Lipe* v. *Eisenlerd* was, upon the offer of the plaintiff, received in evidence. It is true that, at the close of the testimony, the plaintiff's counsel asked leave to withdraw the judgment record, but the leave was not granted. The judgment record was not formally read to the jury, but the fact of its existence, and the character of the issue determined by it, were fully disclosed. It was shown that, upon that trial, Margaret testified that she was unmarried; that Dr. Eisenlord was her seducer. It was also shown that Dr. Eisenlord lay in jail for some time upon the execution issued upon the judgment, and that a portion of its proceeds were paid to Margaret. Reference to the report of that case in 32 N. Y. 229, will indicate its character. It was commenced after the birth of this plaintiff, by the father of Margaret, against Dr. Eisenlord, to recover damages caused by his alleged seduction of Margaret. If the verdict given in this case is true, then

Margaret and Dr. Eisenlord had been married four months before the plaintiff was born. That action rested upon the *quasi* fiction, which the law favors in order to bring to justice the violator of social order and the destroyer of the peace and honor of the family relation. When the alleged seducer atones for his offense, and repairs it by marrying his victim, the law no longer tolerates the fiction upon which the parent's action rests, but, in obedience to the obvious demands of the best public policy, ignores and suppresses it. It bids the offended parent to be still, out of regard to the best interests of his child, and of domestic and social relations generally. If he has any cause of action, it is against the husband for the support of his wife and child. Suppose Margaret's father had brought the latter action against Eisenlord, and had recovered. Is it to be doubted that it would practically have settled the question of marriage forever? Why? Because Dr. Eisenlord would then have had his day in court, in which he could have raised and have had that question decided. His *status* respecting Margaret would have been decided. His *status* respecting Margaret would have determined his *status* respecting their child, this plaintiff. By the common law, the condition of the child follows that of its father. If the father is married to the child's mother before the birth of the child, the child is presumed to be the legitimate child of the husband. If born out of wedlock, the child is *filius nullius*, and cannot even inherit from its mother, unless the statute so declares. Hence, the *status* of the father with respect to the mother being ascertained, that of the child is inevitably determined. Our statutes enable the husband, in an action for divorce against his wife upon the ground of her alleged adultery, to question the legitimacy of the child born after the alleged adultery, and to have it determined as one of the issues in the action. Code Civil Proc. § 1760; 2 Rev. St. Marg. p. 145, § 44. Such decrees have been made. *Cross* v. *Cross*, 3 Paige, 139; *Van Aernam* v. *Van Aernam*, 1 Barb. Ch. 376. Rule 76 regulates the practice. The child has nothing to say upon such an issue. He comes into the world doomed to abide the *status* fixed for him by his parents, so far as his legitimacy is concerned. The plaintiff, by introducing this judgment roll, proved the *status* of his father with respect to his mother months after he was born, and therefore at the time of his birth. He proved that the connection between them was meretricious. It is true that his mother was not a party to that action, but it was not needful that she should be. The plaintiff abides the condition of his father. We need not, however, now hold that this judgment record is conclusive in regard to the *status* of Dr. Eisenlord. That it is competent evidence against this plaintiff of a very high kind we do not doubt. Dr. Eisenlord had his day in court, respecting the matter, under such a pressure of interest as does not permit us to doubt that the truth, if it was as it is now claimed to be, would have been disclosed. We therefore the more readily concur in the order made by the trial court setting aside the verdict and granting a new trial. Order affirmed, with costs of this appeal.

LEARNED, P. J., (*concurring*.) I concur in the opinion in the first case, and in the result in the second case I see no reason to disagree with the conclusion of the learned justice who set aside the verdict and granted a new trial. The plaintiff, after giving in evidence the judgment in *Lipe* v. *Eisenlerd*, asked leave to withdraw it, and it was not read. Whether it would be evidence against him if offered by defendants in another trial I am not willing to say.

INGALLS, J., (*concurring*.) I concur in the result reached by my Brother LANDON in both appeals.