A decree admitting a will to probate on default of contestant will not be vacated on contestant's application, where there is no allegation of testamentary incapacity of decedent, and the ground of contest is simply that the widow and children were insufficiently provided for by the will.

Appeal from surrogate's court, Rockland county.

Sarah E. Gillies and others moved to open a decree admitting the will of John W. Gillies, deceased, to probate. The decree was entered on default of applicants, who were contestants. The motion was denied, and the applicants appeal.

Argued before BARNARD, P. J., and PRATT, J.

*E. T. Lovatt,* for appellants. *Irving Brown,* for respondents.

BARNARD, P. J. The proceedings by proponents were regular. The citation to prove the will was returnable October 31, 1888. The hearing was adjourned from time to time until the 5th of January, 1889, when, no one appearing to oppose, the will was admitted to probate. The witnesses to the will had been examined, in the presence of the contestants, at one of the previous hearings, and on this day the investigation was closed by proof on the part of proponents as to the custody of the will. The fifth of January hearing was agreed to by the proponents, and by the attorney representing the contestant, for the purpose of procuring an adjournment. The regular attorney for contestants says he told his representative to adjourn the case to 9th July, 1889. The contestants' attorney's representative says he at once sent a letter to his principal, stating the real day fixed by the court. As against the respondents, the appellants' case rests upon the receipt by the appellants' attorney of this notice. The question of opening the default is not to be determined by the power of the court to open the probate, but by some injury to appellant which will result by letting the decree stand. No such injury is claimed. The contest on the probate seems to rest upon an allegation that the widow and children are insufficiently provided for by the will. There is no allegation that testator was incompetent, or was defrauded, or forced to make the will. The surrogate, who had heard the witnesses to the will, was likely to know what real cause for contest there was; and, in the absence of any proof or allegation in the affidavits of lack of testamentary power in deceased, the order should stand. Order affirmed, with costs. All concur.

---

### LAWYER *v.* FRITCHER.

(*Supreme Court, General Term, Third Department.* December 11, 1889.)

1. SEDUCTION—LOSS OF SERVICE—EVIDENCE.

In an action for seduction of plaintiff's minor daughter, evidence that defendant by fraud obtained plaintiff's consent to take away the daughter; that he then seduced her; and that, after she was informed that he could not marry her, she took poison, said she did not want to live, and died four days after having left home,—is sufficient to submit to the jury the question whether plaintiff was damaged by the seduction, as it authorizes an inference that the daughter was ill, and unable to render service at the time she took poison, and that this condition was caused by the seduction. LEARNED, P. J., dissenting.

2. SAME.

The fact that the daughter was not, at the time she took the poison, in plaintiff's house and actual service is immaterial.

**3. SAME.**
  Where defendant alleges that plaintiff consented to his taking the daughter away, evidence of circumstances at that time and preceding it is admissible to show that such consent was obtained by fraud; it being, in that case, no defense.

Appeal from circuit court, Schoharie county.

Action by Peter Lawyer against Peter G. Fritcher, for the alleged abduction and seduction of plaintiff's minor daughter. Verdict and judgment for plaintiff, defendant's motion for new trial denied, and he appeals.

Argued before LEARNED, P. J., and LANDON and PUTNAM, JJ.

A. B. Coons, for appellant.   Albert C. Baker, (Wm. C. Lamont, of counsel,) for respondent.

PUTNAM, J. This action is brought by plaintiff to recover for loss of services on account of the alleged abduction and seduction of his daughter Edith, in May, 1886. Defendant had at the time a wife living, and could not marry. When he took Edith away, defendant said: "I am just as clear from my wife as though I never had married her." Plaintiff believed the statement, and was induced thereby to sign a written consent to the marriage of his daughter with the defendant. Defendant took Edith from her father's house on May 17, 1886, under the pretense that he would marry her, but, as he was unable to do so, no marriage was attempted between them. They were proved to have occupied the same bedroom and the same bed for two nights. On the 20th she died by poison, administered by herself. The defendant called out, on the examination of Julia Lawyer, the fact that Edith stated that she had taken poison. That she said: "I have took poison, Julia." "'What did you do that for?' I [Julia] said. She said: 'Because I didn't want to live; I don't want to see anybody.'" It appeared that when defendant brought Edith home, and said that she was his little wife, and after they had occupied the same bed and bedroom one night, Julia Lawyer told Edith that Fritcher could not get married, because he did not have a bill from his wife.

There is no doubt that the relation of master and servant existed between plaintiff and his daughter Edith at the time in question. She was 17 years of age, living with him, and he was entitled to her services. The jury have found, on competent evidence, that the consent of plaintiff to the defendant's taking away his daughter on a promise of marriage was given in the belief that defendant had a legal right to marry, and that such consent was obtained of plaintiff by fraud. It is held in Reg. v. Hopkins, Car. & M. 254, cited and approved in People v. De Leon, 109 N. Y. 229, 16 N. E. Rep. 46, that a consent obtained of the parent by fraud is no defense to an indictment for abduction, nor is it in an action for seduction by the parent. The fact that when the daughter was ill and died she was not at her father's house, and in his actual service, but at defendant's, does not prevent a recovery. Furman v. Van Sise, 56 N. Y. 435; Certwell v. Hoyt, 6 Hun, 575.

The proof is sufficient that the defendant had carnal intercourse with the daughter of plaintiff. They occupied the same bed and bedroom for at least two nights. This evidence was sufficient to justify a verdict, and it is well settled that the jury were not bound to believe the evidence of defendant in the matter. Hence plaintiff showed the relation of master and servant between himself and his daughter; that he was entitled to her services; and that she was seduced by defendant without his consent. The most serious question in the case is whether there was sufficient evidence of damage to submit to the jury, assuming that the plaintiff is not entitled to recover on account of the death of his daughter, as held by the trial judge. In such actions it is necessary to show some actual damage resulting from the seduction. But the loss of service is often merely nominal, though the damages recovered are very large. The slightest proof of damage is sufficient. See Lipe v. Eisenlerd, 32 N. Y. 236, 237; Badgley v. Decker, 44 Barb. 577; Damon v.

*Moore,* 5 Lans. 459. Therefore showing that a slight illness was caused is sufficient. In *Knight* v. *Wilcox,* 18 Barb. 212, it was held not necessary to show pregnancy and the birth of a child; that illness of the daughter was sufficient. The judgment was reversed by the court of appeals, upon the ground only that the illness of the daughter in that case was not the direct and necessary result of the seduction. See 14 N. Y. 413. In *Manvell* v. *Thomson,* 2 Car. & P. 303, the damage resulting from a seduction was a mental illness, threatening the overthrow of the physical system. The authority of the case was questioned by WRIGHT, J., delivering the opinion of the court of appeals in 14 N. Y. 417, but the case was afterwards cited with approval in *White* v. *Nellis,* 31 N. Y. 408, and *Lipe* v. *Eisenlerd,* 32 N. Y. 234. See, also, *Gray* v. *Durland,* 51 N. Y. 429. In *White* v. *Nellis,* 31 N. Y. 405, it was held that plaintiff could recover in such an action whenever the wrongful act, by immediate and direct consequence, deprived the master of his servant, or injuriously affected his rights to such services; citing the case of *Manvell* v. *Thomson, supra.*

Is this such a case? As stated, where the relation of master and servant exists, and the seduction is shown, proof of an actual loss is rather a legal fiction than a reality; the slightest proof is sufficient. In this case the jury have found, on competent evidence, that defendant, a man of 60 years, by gross fraud obtained plaintiff's consent to take away his child, 17 years old, and seduced and debauched her, well knowing that he was unable to marry her. It is to be inferred that she was well when she left home. She was a bright, cheerful, good-tempered child. She thus left home on the 17th of May. When she was brought to defendant's house she was informed that he could not marry her, as he had no divorce from his wife. The fact was drawn out by defendant that she took poison, and stated that she "didn't want to live; did not wish to see anybody." She died on the 20th, four days after she left home. Is there any evidence in the case from which the jury could legitimately conclude that the child, between the 17th, and the time she took the poison which caused her death, was ill? If ill in any way, however slight, her father, who was entitled to her services, was damaged. The jury might properly infer from what she said and the circumstances shown that when she took the drug she did so under a feeling of shame and mortification at finding that she was seduced and ruined, which feeling was the direct and natural result of the seduction shown. When she took the poison the jury were authorized to find that she was mentally ill, and that such illness was caused by the seduction. In *Manvell* v. *Thomson,* 2 Car. & P. 303, a cousin of the girl proved that when she returned to her uncle's house, after she had been seduced and abandoned, she was in a state of very great agitation, and continued so for some time; that she received medical attendance, and was obliged to be watched lest she should do herself some injury. This was taken as evidence raising a presumption of loss of service by the uncle, and he had a verdict of £400. This case having been cited and approved in several cases in the court of appeals, may be deemed an authority. It was properly decided. A person when in a state of great and continued agitation, and who has to be watched for fear she will harm herself, is not only mentally, but physically, ill. On the authority of that case, we think the judge correctly submitted to the jury the question whether the plaintiff sustained damages by the seduction proved in this case. There was evidence to justify the finding that the child, as a result of her seduction, had taken poison; that she was thrown into that state of semi-insanity that induced her to take her own life. Such evidence proved that she was mentally and physically ill, and was such slight evidence of damage to plaintiff that the judge could properly submit the case to the jury. If, in *Manvell* v. *Thomson,* the fact that the niece was thrown into a state of agitation, so that she had to be watched, raised a presumption of loss of service by the uncle, here, where the act of the defendant threw

the daughter into such a state of agitation and mental distress that she actually did take her own life, the presumption of loss of service is equally strong. She should have been watched. Her condition was such that she required care and attendance, and, although while in this condition she was not in her father's house, he is just as much presumed to have suffered damage as though she had been at his home.

It was no error to show the circumstances, including the conversation between the parties, occurring at the time and preceding the time that defendant took away the child, although the conversation called out showed a promise of marriage. The defendant had set up that plaintiff consented to whatever was done. One of the issues in the case was whether or not Edith was taken away with her father's consent. Plaintiff could properly prove all the facts and circumstances to prove that his consent was obtained by fraud. In this case whatever took place between the parties, and what was said, was necessarily shown on the question whether the girl was seduced or not. We do not think that the authorities cited by the defendant apply to such a case as this. The charge of the learned judge seems to have been favorable to the defendant, and we do not discover any errors, either in his charge or in his rulings, upon the trial. The judgment should be affirmed, with costs.

LANDON, J., (*concurring*.) Seduction accomplished, implies consent. This consent is at common law a bar to an action against her seducer by the female seduced. As no physical violence was done the father, the common law could afford him no remedy except by resort to the fiction that his daughter is his servant, and therefore owes him service; that if she is seduced, and thus rendered incapable of rendering service, he loses the service she owed him; and he therefore may recover against the seducer who causes such loss of service. This artifice is properly termed a "legal fiction," the real ground of recovery being for damages for the outrage perpetrated. In this case all the requirements of the fiction are made made out, except, possibly, the inability to render service consequent upon the seduction. Why is proof of this consequent inability required? Simply to complete the logical consistency of the fiction. Justice does not require it. Justice examines to ascertain whether the alleged outrage is really such, and of what degree of aggravation. The outrage proven, a *scintilla* of evidence of the consequent inability to render service will suffice, and ought to suffice. Liberal presumptions may be indulged, if the justice of the case requires it, to establish this member of a series of fictional requirements. Here the seduction was proved, and the daughter's subsequent suicide. The jury could infer that before she took the poison there were some moments—a single one would be enough—in which she was not so capable of rendering service as she would have been if her seduction had not been effected. I concur with my Brother Putnam.

LEARNED, P. J., (*dissenting*.) The defendant, a married man over 60 years of age, took plaintiff's daughter Edith, about 17 years old, from her father's house, on Monday, May 17th. He did this with the consent of the parents. But the verdict of the jury establishes that he obtained this consent by fraud. That night he stayed with her at a hotel, and occupied the same bed with her, saying to the landlady that Edith was his wife. The next day he arrived with her at his own house. They occupied the same bed, and he made a similar statement viz., that he had been married to her the day before. When there Edith's sister (who had been living at defendant's) told Edith that defendant could not get married; he had not been divorced. The next day, after dinner, Edith became sick. She had taken poison. The day following, Thursday, the 20th, she died from the effects of the poison. Before death she told her sister that she took poison because she did not want to live, and that she did not want to see anybody. There was evidence that Edith

had recovered from her usual monthly courses a week before she went away with defendant, and that before her death her underclothes were spotted with blood, which a physician supposed to be the menstrual flow.

The important point in this case is whether, on these facts, the court could properly submit to the jury the question whether the plaintiff sustained damage, other than that of death, for loss of service by reason of the seduction. It will be seen that there is no evidence of seduction before Monday night; no evidence of Edith's condition from Monday night till Wednesday noon, when she took the poison; and, of course, no evidence of pregnancy. The court charged the jury that her death was not a direct result of the sexual intercourse. Hence the question must be whether the jury were justified in finding that between Monday night and Wednesday noon Edith's condition was so ill, owing to the seduction, that she was unable to render the service which her father was entitled to demand from her. In *Hewitt* v. *Prime*, 21 Wend. 79, this court charged that "no loss, expense, or damage prior to the suit need be shown; it is enough to prove the seduction." This was held not to be error. And the court said that "the loss sustained by the parent from the corruption of her [the daughter's] mind and the defilement of her person by the guilty seducer is considered ground for damages consistent even with the first principles of the action." But such was not the charge of the court in the present case, since the court rested the right of recovery on actual damages. Therefore we must consider whether there was such actual damage. If the court had charged that no damage need be shown, the defendant might have excepted, and brought up the point for review. And we must notice th t in the case just cited the seduction was in July; the daughter became pregnant; the action was commenced in September; and a child was born in April, before the trial. So that there was evidence from which the jury could have found inability to work. And the trial court probably intended that no other proof was needed. The cases of *Clark* v. *Fitch*, 2 Wend. 459, and *Martin* v. *Payne*, 9 Johns. 387, cited in the opinion, do not sustain the point that no proof of damage need be given. See especially the remarks of Justice SPENCER in the latter case. In *Ingerson* v. *Miller*, 47 Barb. 47, the daughter had been pregnant over three months, and consulted a physician for relief. He refused. She fainted, and died. The defendant asked the court to charge that there was no proof of loss of service. The trial court refused, and this was held correct. The court said, in substance, that if the daughter was pregnant she must have been disqualified to render such service as she would owe. But the doctrine was still asserted that mere seduction, without pregnancy, consequent ill health, or injury to the servant, would not give the right of action. It is so stated in *Whitney* v. *Elmer*, 60 Barb. 269. In the case of *Badgley* v. *Decker*, 44 Barb. 578, the court say the rule is still adhered to with us that loss of service is the legal *gravamen* of the action. There the daughter became pregnant, and then lived with plaintiff till the birth of the child. The doctrine is also stated in the same way in *Bartley* v. *Richtmyer*, 4 N. Y. 38. In *Lipe* v. *Eisenlerd*, 32 N. Y. 236, while the court say that damages are given "to redress a moral outrage and punish libertinism," they reaffirm the doctrine that there must be a loss of service or the action will fail. So in the brief memorandum in *Lawrence* v. *Spence*, 99 N. Y. 669, 2 N. E. Rep. 145, it is stated, in affirming the recovery, that the result of the seduction was a loss to the father of his daughter's services. We find no later authority than these. It is true that it has been said that the service owing may be a fiction, as, for instance, in case of a wealthy father, whose daughter renders no actual service. Courts have held that the relation of master and servant in such cases was enough, although no real service was rendered. While this may be sufficient to show that service was owing, there must be proof that there has been a loss to the plaintiff.

Now, since the learned justice took from the jury every consideration of the

v.7 N.Y.s.no.17—58

death of Edith as being too remote, we are limited, in considering the loss of service, to the time prior to her taking poison. Her sister was on the stand, and could have testified to Edith's physical condition. But no such testimony was given. The sister herself also took poison about the same time, and probably from the same package, but recovered from the effects. And there is no reason to suppose that her act was occasioned by any seduction, or that she had been incapacitated from working. If it should be said that the taking of Edith from her home caused damage to the father, the answer is that this action is for the seduction. It is only for seduction that punitive damages may be given. Actual damages only could be recovered for the mere carrying away. The same rule seems to prevail in other states, as to the necessity of showing a loss of service. In *Abrahams* v. *Kidney*, 104 Mass. 222, it was said that if the proximate effect of the seduction was mental distress, impairing health and ability to labor, this was sufficient; but if the loss of health was caused by mental suffering, produced by shame resulting from exposure, it was not sufficient. The seduction was not the proximate cause. Again, the fact of service must be proved. *Sutton* v. *Huffman*, 32 N. J. Law, 58. See *Humble* v. *Shoemaker*, 70 Iowa, 223, 30 N. W. Rep. 492. It would seem that by statute in Virginia, Michigan, and Kentucky it is not necessary to aver or prove loss of service; and the enactment of such statutes shows that without them it would be necessary to prove a loss of service. We find no case in which not only the service, but the loss, was fictitious also. In every case cited there has been evidence from which might justly be inferred inability, partial at least, to render service. But in this case the jury must have inferred from the fact of suicide that, during the day and a half previous, Edith was distressed in mind, and that such distress was occasioned by the seduction, and then must have inferred that such distress rendered her incapable of work. Of all this we see no evidence. We may test this question in another way. Suppose that in this action no exemplary or punitive damages could be granted. Could there possibly have been a recovery of any amount whatever for actual damages? Would not a court have said unhesitatingly that on this evidence no verdict for any amount of actual damages could stand? But there must be actual, before there can be punitive, damages. The defendant denies the seduction. But, if the verdict of the jury is correct, he committed a grievous wrong, more inexcusable on account of his age and his evident influence over the plaintiff and his family. The result has been very lamentable. We have no sympathy for him, if he is guilty. We may even wish that the legislature would say that "a father whose daughter has been seduced shall maintain an action for the injury done to his wounded honor and parental feelings." But such is not the law. *Clark* v. *Fitch, ut supra.* It is not for us to legislate or to violate legal principles under the stress of a case like the present. We must adhere to rules, whatever our sympathies may be. Nothing leads to more incorrect decisions than an effort to do what is thought to be just in a special case by a little evasion of well-settled law. Hence comes the worst of evils, uncertainty in the law, and judgment "according to the size of the chancellor's foot." For these reasons we think the judgment should be reversed, and a new trial granted, costs to abide the event.